**In the Matter of ST. PETERSBURG HOTEL ASSOC., LTD., Debtor.**

**Bankruptcy No. 82–1065.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 30, 1983.

Howard Batt, Clearwater, Fla., for Royal Trust Bk.

Domenic L. Massari, Tampa, Fla., David L. Schrader, St. Petersburg, Fla., for debtor.

## ORDER ON APPLICATIONS FOR AUTHORITY OF DEBTOR TO ENTER INTO A LEASE OF A PORTION OF DEBTOR'S PREMISES

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case filed by St. Petersburg Hotel Association Ltd. (Association), the Debtor who seeks the approval of this Court to enter into two separate lease agreements whereby the Debtor proposes to lease portions of the hotel known as the St. Petersburg Bayfront Concourse Hotel located at 333 1st Street South, St. Petersburg, Florida.

The first proposed lease is with George McDowell, an experienced hotel operator, and provides for the lease of a portion of the hotel premises which includes 209 hotel rooms to be used as a transient hotel facility (as opposed to a hotel which relies on long term residential leases.) This lease provides for an initial term of ten years at a fixed minimum rental rate of $30,000 per month, or 15% of the gross revenues for any given lease year if greater than the fixed minimum rent. The lease also gives the lessee two five-year options (Debtor's Exh. # 1). The Debtor urges that the proposed lease is in the best interest of the estate inasmuch as (1) the lease guarantees the minimum payment of rent in the amount of $30,000 per month or $360,000 per year prior to debt service; (2) that this lease together with the previously authorized food and beverage lease, guarantees the Debtor a minimum profit of $460,000 per year (before debt service) as compared to last year's loss of $195,000; that the placement of this lease shall relieve the Debtor of certain expenses currently borne by the Debtor and that the proposed lessee will obtain a national hotel franchise which has a national reservation system. In addition, it appears that McDowell has commitments for $1.3 million in loan and equity funds to refurbish the hotel rooms and the lobby in order to make the Bayfront Concourse a productive and economically feasible hotel operation.

Based on the testimony, it appears that the refurbished 209 room facility would produce revenues sufficient to pay the $3,600,000 minimum rental and a projected $1,029,000 in percentage rent to the Debtor over the ten year term of the lease.

The second lease (Debtor's Exh. # 4) presented to the Court for approval involves the lease of 15,000 square feet of the hotel, which space is currently used as meeting and banquet facilities. Carl E. Nix, Jr., d/b/a St. Petersburg Athletic Club is the owner and operator of Tyrone Racquetball Courts located in St. Petersburg and proposes to convert 15,000 square feet of first floor space for use as a health club and racquetball facility. As in the case of the McDowell lease, Nix testified to oral commitments for $400,000 to refurbish and install the health club which would include four racquetball courts, saunas, showers, a weight room and related facilities. Based on his experience in the operation of health clubs and his knowledge to the downtown area of St. Petersburg, Nix projects the ability to pay the $600,000 minimum rent and $50,000 in percentage rent over the ten year period.

The Debtor contends that the second proposed lease is also in the best interest of the estate due to the infusion of increased revenues, reduced expenses to the Debtor and the improvements to the hotel which shall be financed and completed by the lessee.

The Debtor offered an Analysis of Lease Proposals (Debtor's Exh. # 3) which demonstrated that the McDowell and Nix leases over their first ten year term will generate gross income to the Debtor of approximately $5,279,000 having a present value, assuming a 14% discount rate, of $3,770,000. Over a twenty year term generating, if the options are exercised by the lessees, the income stream would be in excess of $10,000,000. Additionally, the leases result in

gross savings to the Debtor of over $3.2 million because the tenants will be responsible to pay a portion of the taxes, utilities and maintenance.

Each Application for authority to enter into the leases is opposed by St. Petersburg Bayfront Hotel Corporation (Corporation), a Florida corporation whose shareholders are banks and savings and loan associations. The Corporation holds the first mortgage on the hotel facility and a security interest in the tangible and intangible assets of the Debtor. The Corporation contends that the Debtor's attempt to procure independent leases constitutes an impermissible reorganization of the Debtor outside of the framework of a Chapter 11 plan. It is also asserted that the placement of several leases effectively destroys the unitary nature of the hotel thereby significantly impairing the Corporation's ability to procure a buyer for the hotel and achieve confirmation of its proposed plan of reorganization.

█ Bankruptcy Code § 363 governs the Applications filed by the Debtor in this case. First, Bankruptcy Code § 363(e) requires notice and a hearing of applications seeking leave to lease estate property out of the ordinary course of business. A hearing was scheduled and all parties of interest appeared and were heard. Bankruptcy Code § 363 also impliedly requires the Court to find that it is good business judgment for the Debtor to enter into the leases. *In re Schear Realty and Investment Co., Inc.,* 25 B.R. 461 (S.D.Ohio 1982). The only other prerequisite to the Court allowing the Debtor to enter into these leases is found in Bankruptcy Code § 363(e) which provides:

> Notwithstanding any of the provisions of this section, at any time, on request *of an entity that has an interest in property used, sold, or leased, proposed to be used, sold, or leased by the Trustee,* the Court shall prohibit or condition such use, sale or lease, as is necessary to provide adequate protection of such interest. In any hearing under this section, the Trustee

has the burden of proof on the issue of adequate protection. (emphasis supplied) 11 U.S.C. § 363(e).

The Corporation in the present case, has not made a Bankruptcy Code § 363(e) request, but merely objected to the proposed leases. Be that as it may, there is no doubt that the leases with McDowell and Nix will adequately protect the interest of the Corporation. This Court takes judicial notice of the fact that the Debtor has made no payments to the Corporation during the pendency of these proceedings. It is apparent that McDowell and Nix's leases will pay the Corporation $35,000 per month, and will ultimately pay the full extent of its allowed secured claim, less any set-offs or adjustments the Court should determine, in the event that the Debtor prevails on its damage claim against the Corporation for alleged latent construction defects.

It further appears that the Corporation is adequately protected inasmuch as the $5,200,000 in cash flow generated by the leases has a present value of $3,700,000 and will provide greater monthly payments to the Corporation than it would receive under any of the offers previously made to the Corporation, even if they could be considered firm offers. Using *Leake's* tables and applying percentage interest figures to the "Offer to the World" (Valuation Trial Exhibit) and the Wittner offer (Valuation Trial Exhibit), submitted to the Corporation, indicates the following:

> Monthly payments to Mortgagee under Offer to the World—
>> First Year—$19,166.67 per month
>> Second Year—$26,833.33 per month
>> Last Eight Years—$37,012.61 per month
>
> Monthly payments to Mortgagee under Wittner offer—
>> First Five Years—$19,166.67 per month
>> Last Five Years—$26,833.33 per month

█ Thus, the $35,000 per month available from the McDowell and Nix Leases provide greater payments on a monthly basis to the Corporation than contemplated under the "Offer to the World" or the Witt-

ner offer. Additionally, it does not appear that the value of the collateral of the Corporation will be harmed by either one of these leases. It is recognized that when a lease will not harm the value of the premises and is in the best interest and business judgment of the Debtor, it should be approved at any stage of the proceeding. *In re Schear Realty, supra; In re Allen Carpets,* 25 B.R. 595 (E.D.N.Y.1982). In *Schear, supra,* the Court was faced with similar circumstances as in the instance case. The mortgagee, in that case, was foreclosing its mortgage in state court. The Debtor proposed a two-year lease with three five-year options. In light of the benefit to the estate, that Court approved the lease and deemed that it was not even necessary to consider the adequate protection issue.

■ This leaves for consideration the Corporation's contention that the attempt to procure the independent leases constitutes an impermissible reorganization outside the framework of a Chapter 11 Plan.

It is well settled that the Court need not wait for confirmation to approve a lease or disposition of a substantial portion of the Debtor's assets if there is a possibility the Debtor will lose a lucrative business proposal by the delay which is likely to be occasioned in considering a plan or plans of reorganization. Thus, in *In re White Motor Credit Corporation,* 4 C.B.C.2d 1562 (D.Ohio 1981), the Court held that under Bankruptcy Code § 363 the Court could approve the sale of all or substantially all of the Chapter 11 debtor's assets without a plan when an emergency exists which necessitates immediate sale of the assets.

■ In the instant case, the Debtor is not disposing of substantially all of its assets, but will still retain five floors of the hotel, a leased food and beverage operation and a portion of the hotel's first floor. All of this additional property can be dealt with in the Debtor's plan and can provide additional income for payment of creditors. The *White Motor, supra* case which recognizes the emergency doctrine has been followed by several courts. *In re Brookfield Clothes,* *Inc.,* 31 B.R. 978 (D.C.S.D.N.Y.1983), the District Court affirmed the Bankruptcy Judge's authorization of a sale of all assets of a debtor without confirmation of a plan. In that case, the Court cited innumerable Bankruptcy Code sections and cases supporting the proposition that the Bankruptcy Court has the authority under Bankruptcy Code § 363 and other Code provisions to approve a disposition of all, or substantially all, of the debtors assets in emergency situations and otherwise. Most recently, a sale of assets prior to submission of the reorganization plan was approved. *In re Mesta Machine Company,* 30 B.R. 178 (Bkrtcy.W. D.Pa.1983).

The Corporation contends that the holdings of *White Motor* and its progeny are applicable only in cases of extreme emergency, and that in the case at bar no emergency situation exists. It is the opinion of this Court that an emergency situation is present since if the Debtor is prevented from entering into the proposed leases, the Debtor's chances for rehabilitation are significantly reduced, if not destroyed.

The Court is not oblivious to the *Braniff* holding that the total liquidation of the assets of a Chapter 11 debtor or a liquidation of substantially all of its assets is impermissible, unless it forms a part of the overall plan of reorganization. *See, In re Braniff Airways, Inc.,* 700 F.2d 935, 10 B.C.D. 933 (5th Cir.1983). However, in the instant case, the proposed action does not involve any liquidation of the assets of the Debtor, but merely proposes to lease part of the Debtor's premises. The Debtor will retain ownership and will continue to use part of the subject property. Thus, the sole consideration is whether or not the proposed transaction represents a meaningful overall benefit to the Debtor and to the general estate.

In this case, the Court is satisfied that the proposed hotel operation and health club will produce an economic benefit to the Debtor; that the Corporation's interest shall be adequately protected and that approval of the proposed leases in the best interest of the estate.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Applications of Debtor to Enter into a Lease of a Portion of Debtor's Premises filed by St. Petersburg Hotel Associates, Ltd. be, and the same hereby, are approved. It is further

ORDERED, ADJUDGED AND DE-CREED that the Debtor, be and the same hereby is, authorized to enter into the proposed lease agreement with George F. McDowell, for the lease of certain hotel space to be used in the operation of a transient hotel as set forth in the proposed agreement and in accordance with the terms and conditions of the same. It is further

ORDERED, ADJUDGED AND DE-CREED that the Debtor be, and the same hereby is, authorized to enter into the proposed lease agreement with Carl E. Nix, Jr. d/b/a St. Petersburg Athletic Club, for the lease of certain hotel space to be used as a racquet ball/health club facility as set forth in the proposed agreement and in accordance with the terms and conditions of the same.