GEE, Circuit Judge.
 

 The issue in this case is how far a debtor-in-possession can stretch the bankruptcy laws to undertake transactions outside a plan of reorganization. The district court did not consider whether the proposed transactions would effect an end run around the protection granted creditors in Chapter 11 of the Bankruptcy Code. For this reason, we vacate the district court order that affirmed the bankruptcy court decision authorizing the debtor to proceed with lease negotiations and remand for further consideration.
 

 FACTS
 

 Appellee, Continental Air Lines, Inc. (“CAL”), filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on September 24, 1983. During the period relevant to this case, CAL operated its commercial airline service as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107-1108. CAL owes appellants, its Institutional Creditors (“Institutional Creditors”), in excess of $30 million.
 

 On March 16, 1984, CAL filed with the bankruptcy court a motion for authority to enter into lease agreements for two DC-10-30 aircraft. CAL represented that the leased aircraft would allow it to strengthen and enhance profitability and cash flow
 
 *1225
 
 greatly and to increase the asset value of its Mid Pacific and South Pacific operations. In an accompanying motion to limit and restrict notice of the motion to enter into the leases, CAL further represented that the two aircraft were necessary in order for CAL to preserve its route authority in the Pacific, supposedly one of its most valuable assets.
 

 The bankruptcy court granted CAL’s latter motion; a three-day hearing on the proposed leases commenced on March 30, 1984. On April 6, 1984, the bankruptcy court signed an order authorizing the leases. The bankruptcy court amended this order on April 16, 1984. Under the terms of the amended order, the bankruptcy court authorized the leases subject to its approval of the final terms.
 
 [1]
 
 The bankruptcy court found that if CAL did not
 

 implement new DC10-30 service to its Mid-Pacific and South Pacific route system, CAL’s revenue and profit forecast for 1984 and thereafter [would] be jeopardized, CAL [would] be unable to effectively compete over these routes, and CAL and its estate [might] not be able to protect and preserve these route systems for the benefit of CAL, its bankruptcy estate and the creditors thereof.
 

 The bankruptcy court concluded that CAL had properly sought authority under 11 U.S.C. § 363 to enter into the leases, that the Mid and South Pacific route systems were extremely valuable assets of the bankruptcy estate under 11 U.S.C. § 541(a), and as a debtor-in-possession CAL “is under a duty to take reasonable steps to preserve, protect and enhance the assets of its bankruptcy estate which have value for the benefit of CAL and its creditors.” The bankruptcy court further concluded that “[t]his duty is subject to the overall impact of any proposed individual action on the existing financial condition of the Debtor and the attendant risks to creditors.”
 

 On appeal to the district court, the Institutional Creditors argued that the purpose of the proposed transaction was to avoid and shortcut the process that leads to a plan of reorganization, hence the bankruptcy court lacked the power to approve the leases in light of
 
 In re Braniff Airways, Inc.,
 
 700 F.2d 935 (5th Cir.1983). In rejecting the Institutional Creditors’ position and affirming the bankruptcy court’s order, the district court held that, unlike
 
 Braniff,
 
 CAL’s proposed leases did not “dictate the terms of any future plan of reorganization, nor [would they] leave CAL with so few assets that reorganization [would become] unlikely.” The leases did not have restrictions “on voting or any requirement for release of claims and [would] not alter any creditor’s priority.” Instead, “the proposed transaction by CAL is a ‘use, lease or sale’ of the debtor’s assets as permitted under 11 U.S.C. § 363, and as such it was within the bankruptcy court’s power to approve the agreement without submitting it to a vote of the creditors.”
 

 On appeal to this Court, the Institutional Creditors present us with two basic sets of issues. The first concerns the statutory authority for CAL’s proposal to enter into a 10-year post-petition financial commitment in excess of $70 million. The second addresses the adequacy of the process the Institutional Creditors received in the approval of the leases. Because we are not yet convinced that there is authority for the leases, we decline to reach the second set of issues on this appeal.
 

 11 U.S.C. § 363(b) TRANSACTIONS
 

 Given the novelty of CAL’s proposed use of 11 U.S.C. § 363(b),
 
 [2]
 
 an overview of the relevant statutory and case law authority for the proposed transaction is in order. A debtor-in-possession under 11 U.S.C. § 1107 is authorized, absent court order otherwise, to operate the debtor’s business. 11 U.S.C.
 
 *1226
 
 § 1108. Such a debtor-in-possession, “after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.” 11 U.S.C. § 363(b).
 

 When a proposed use, sale, or lease of assets is outside the ordinary course of business, § 363(b) requires that the assets be property of the estate. What is included in property of the estate is determined by 11 U.S.C. § 541. We also agree with the Second Circuit that implicit in § 363(b) is the further requirement of justifying the proposed transaction.
 
 In re Lionel Corp.,
 
 722 F.2d 1063, 1071 (2d Cir. 1983). That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.
 
 Id. See also Matter of Baldwin United Corp.,
 
 43 B.R. 888, 906 (Bankr.S.D. Ohio 1984) (The debtor-in-possession “is required to justify the proposed [transaction] with sound business reasons”);
 
 Matter of St. Petersburg Hotel Assoc., Ltd.,
 
 37 B.R. 341, 343 (Bankr.M.D .Fla.1983) (Section 363 “also impliedly requires the Court to find that it is good business judgment for the Debtor to enter into” the transaction.). Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in
 
 Lionel,
 
 the bankruptcy judge
 

 should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.
 

 722 F.2d at 1071.
 
 See, e.g., Matter of Baldwin United Corp.,
 
 43 B.R. 888, 905-906 (Bankr.S.D.Ohio 1984).
 

 If the requirements in § 363(b) are satisfied, a proposed transaction is still subject to the requirements in 11 U.S.C. § 363(d) and (e). According to § 363(d), the use, sale or lease of estate property is authorized under § 363(b) “only to the extent not inconsistent with any relief granted under section 362(c), 362(d), 362(e) or 362(f)....” Section 363(e) further provides that, on the request of an entity having an interest in property used or proposed to be used, “the court, with or without a hearing, shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest.” Adequate protection, as defined by 11 U.S.C. § 361, may be cash payments, additional or replacement liens, or such other relief as to provide “the indubitable equivalent of such entity’s interest in such property.”
 

 Finally, as this Court recognized in
 
 Braniff
 
 § 363 does not authorize a debt- or and the bankruptcy court “to short circuit the requirements of a reorganization plan by establishing the terms of the plan
 
 sub rosa
 
 in connection” with a proposed transaction. 700 F.2d at 940. When a proposed transaction specifies terms for adopting a reorganization plan, “the parties and the district court must scale the hurdles erected in Chapter 11.
 
 See, e.g.,
 
 11 U.S.C. § 1125 (disclosure requirements);
 
 id.
 
 § 1126 (voting);
 
 id.
 
 § 1129(a)(7) (best interest of creditors test);
 
 id.
 
 § 1129(b)(2)(B) (absolute priority rule).”
 
 Id.
 
 at 940.
 

 AUTHORITY FOR CAL’S PROPOSED LEASES
 

 Applying the foregoing principles and our decision in
 
 Braniff to
 
 today’s case, we must consider (1) whether the proposed
 
 *1227
 
 transaction represents a use, sale, or lease of estate property; (2) whether the district court erred in finding that the business justifications offered for the transaction were sufficient to warrant authorization to proceed with lease negotiations; (3) whether the proposed transactions otherwise violate or are incompatible with the provisions of Chapter 11.
 

 It is undisputed in this case that the proposed transaction is outside the ordinary course of business, thus invoking § 363(b). CAL argues that the asset it proposes to use under § 363(b) is estate funds. According to 11 U.S.C. § 541, property of the estate includes “[pjroceeds, product, offspring, or profits of or from property of the estate,” as well as “[a]ny interest in property that the estate acquires after commencement of the case.” 11 U.S.C. § 541. Property of the estate therefore includes funds derived from airline operations or other sources.
 
 See In re Lotta Water Land Co.,
 
 25 B.R. 32 (Bankr. N.D.Tex.1982) (distinguishing earnings attributable to individual debtor from earnings attributable to estate for corporate debtor);
 
 Matter of Sundale Associates, Ltd.,
 
 23 B.R. 230, 232 (Bankr.S.D.Fla.1982) (property acquired post-petition becomes an asset of the estate). Hence the application of these funds to satisfy lease obligations is a use of estate property pursuant to § 363(b).
 

 We further conclude that the district court did not err in affirming the bankruptcy court finding that the business justifications CAL offered in support of the leases are sufficient to authorize proceeding with lease negotiations,
 
 [3]
 
 something the Institutional Creditors do not challenge at this point. Institutional Creditors’ Reply Brief at 3. The record shows that CAL’s routes in the Mid and South Pacific are of significant economic value to it; that the new aircraft would allow CAL (1) to satisfy an increase in the quantity of airline services demanded as a result of a change in exchange rates; (2) to exploit an existing competitive advantage by offering new route combinations and by filling a void left by withdrawing carriers; (3) to take advantage of foreign governments’ willingness to negotiate additional service requests; and (4) to increase cash flow as well as profits. These reasons were sufficient to warrant authorizing CAL to proceed with lease negotiations, subject to review of all considerations upon having the terms of the final agreement.
 

 With respect to the other provisions of § 363, the Institutional Creditors do not argue here that the proposed leases are somehow inconsistent with any of the relief granted under Section 362(c), 362(d), 362(e) or 362(f). 11 U.S.C. § 363(d). And, while implicit in the focus of their primary contention, the Institutional Creditors did not request the bankruptcy court to grant them adequate protection under § 363(e). Rather, the Institutional Creditors’ primary argument is that the proposed leases represent pieces of a creeping plan of reorganization, incompatible with our holding in
 
 Braniff.
 
 In this regard, the Institutional Creditors assert that the district court fundamentally erred in confining the scope of our holding in
 
 Braniff
 
 to whether a transaction is a use, sale, or lease of estate property. Institutional Creditors’ Brief at 11-12.
 

 In
 
 Braniff
 
 we recognized that a debtor in Chapter 11 cannot use § 363(b) to sidestep the protection creditors have when it comes time to confirm a plan of reorganization. Likewise, if a debtor were allowed to reorganize the estate in some fundamental fashion pursuant to § 363(b), creditor’s rights under, for example, 11 U.S.C. §§ 1125, 1126, 1129(a)(7), and 1129(b)(2) might become meaningless. Undertaking reorganization piecemeal pursuant to § 363(b) should not deny creditors the protection they would receive if the proposals
 
 *1228
 
 were first raised in the reorganization plan.
 
 See In re AUison,
 
 39 B.R. 300, 303 (Bankr. D.N.M.1984). At the same time, we fully appreciate that post-petition, pre-confirmation transactions outside the ordinary course of business may be required and that each hearing on a § 363(b) transaction cannot become a mini-hearing on plan confirmation. Balancing these considerations, we hold that when an objector to a proposed transaction under § 363(b) claims that it is being denied certain protection because approval is sought pursuant to § 363(b) instead of as part of a reorganization plan, the objector must specify exactly what protection is being denied. If the court concludes that there has in actuality been such a denial, it may then consider fashioning appropriate protective measures modeled on those which would attend a reorganization plan.
 

 The district court in today’s case did not consider the Institutional Creditors’ claims that they were being denied certain protection they would receive if the transaction were part of a reorganization plan. Because the bankruptcy court may have lacked statutory authority to authorize the leases if the Institutional Creditors could have defeated a plan of reorganization containing the leases
 
 [4]
 
 or may have had to condition certain terms of any lease, we VACATE the district court’s order and REMAND for consideration consistent with this opinion.
 
 [5]
 

 [1]
 

 . The bankruptcy court approved the lease transactions by separate order dated August 13, 1984. The Institutional Creditors have appealed these orders but this appeal is not presently before the Court.
 

 [2]
 

 . We have found no case and none has been brought to our attention where a debtor-in-possession has proposed under § 363(b) to use estate funds to satisfy obligations under a lease not contemplated in 11 U.S.C. § 365.
 

 [3]
 

 . We interpret the bankruptcy court order as going no further than this, however. As the bankruptcy court undoubtedly recognized, in granting authority to proceed subject to approval of the final lease terms, a thorough analysis of business justifications is not practical until the terms are finally struck.
 

 [4]
 

 . During oral argument counsel for the Institutional Creditors represented that if the leases were part of a reorganization plan the Institutional Creditors could have "knocked [the leases] right out.”
 

 [5]
 

 . Since the procedural issues in this case will be moot if the lower court determines that CAL's proposed leases are invalid as a matter of law, we decline to reach those issues at this time,