**In re CRUTCHER RESOURCES CORPORATION, CRC Teton, Inc., CRC–KBM Well Service, Inc., CRC Colorado Well, Inc., CRC Mallard, Inc., CRC Well Services, Inc., CRC Wireline, Inc., and Crutcher Finance, N.V., Debtors.**

**Bankruptcy Nos. 486–42209 to 486–42215 and 486–42265.**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Jan. 7, 1987.

**629**

Michael A. Berman, Office of the Gen. Counsel, Securities & Exchange Commission, Washington, D.C.

Bruce Catania, Shearman & Sterling, New York City, for Citibank, N.A.

Joe Chervin, Arthur S. Linker, Rosenman, Colin, Freund, Lewis & Cohen, New York City, for J. Henry Schroder Bank & Trust Co.

Charles Gibbs, Jenkens & Gilchrist, Dallas, Tex., for Citibank, N.A. and Senior Secured Lenders.

William T. Neary, U. S. Trustee, U.S. Department of Justice, Dallas, Tex.

Arthur A. Stewart, Sheinfeld, Maley & Kay, Dallas, Tex., Alex Galbraith, Baker & Botts, Houston, Tex., for the debtor.

## MEMORANDUM OF OPINION

JOHN C. AKARD, Bankruptcy Judge.

Crutcher Resources Corporation (Crutcher), the parent corporation, and its subsidiaries (Debtors) brought an 11 U.S.C. § 363(b)(1)[1] Motion to Sell Free and Clear

---

**1.** "(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

11 U.S.C. § 363(b)(1). A Debtor-in-Possession in a Chapter 11 proceeding has the powers of a Trustee, 11 U.S.C. § 1107.

of Liens. The testimony at the hearing indicated that all assets of the Debtors are pledged and that the Debtors have projected operating losses for the next three months. The Motion to Sell is limited to the assets of two subsidiary Debtors, CRC Teton, Inc. (Teton) and CRC Colorado Well, Inc. (Colorado). The proposed purchasers are two corporations formed by the Presidents of the two subsidiaries. The evidence presented at the hearing showed that these two subsidiaries are not operating at a loss at the present time and, in fact, have positive cash flows. Along with the other Debtor subsidiaries, Teton and Colorado guaranteed Crutcher's prepetition debt in the approximate amount of $97 million. In addition, they participated in guaranteeing approximately $3 million in postpetition debt. The Debtors' Motion is supported by the Lenders.[2]

The Indenture Trustee, the J. Henry Schroder Bank & Trust Company (Schroder) filed an objection to the sale on behalf of the holders of approximately $30 million of subordinated debentures issued by Crutcher Finance, N.V., an affiliated Chapter 11 Debtor. Neither Teton nor Colorado extended guarantees on the Crutcher Finance, N.V. debentures.

The Debtors assert that § 363(b)(1) permits a Chapter 11 corporate debtor to sell all of its assets outside a Plan of Reorganization without resort to conversion to Chapter 7 where circumstances warrant, citing *The Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223 (5th Cir.1986) and Hurley, *Chapter 11 Alternative: Section 363 Sale of all of the Debtor's Assets Outside a Plan of Reorganization*, 58 Am. Bankr.L.J. 233 (1984).

In *Continental*, the company was clearly attempting to reorganize. To do so, it proposed to lease two aircraft for ten years at a cost of $70 million financed postpetition.

The *Continental* Court held the lease and financing arrangement could be approved if the Debtor established a business justification for the transaction, citing *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir.1983).

In the instant case, the Debtors presented evidence that: the parent and its subsidiaries are losing money at approximately $50,000–$70,000 per week; there are no unencumbered assets; they are operating postpetition on accounts receivable collected; and there is substantial risk as to the saleability or lease of the assets of the subsidiaries (principally, oil rigs) in light of the depressed energy industry. The Debtors presented the transaction to sell the two subsidiaries as a chance to save employees' jobs and to salvage something of the companies. Further, they stated that it was a real advantage to sell the subsidiaries now as going concerns, both to Crutcher and the employees.

Crutcher cited *In re Rausch Manufacturing Co., Inc.*, 59 B.R. 501 (Bankr.D. Minn.1985), as standing for the proposition that a Debtor may sell virtually all of its assets outside a Plan. The case is distinguishable from the case at bar. In *Rausch*, the controlling factor was that *all* the Debtor's assets were to be sold to an entity which intended to continue the Debtor's business under its old name. In Crutcher, however, the Debtors admitted that they cannot continue in business in Chapter 11, have not attempted to formulate a plan, and are attempting to sell the only two profitable subsidiaries, not *all* of Crutcher's assets. In *Rausch*, the sale permitted the debtor to continue as a viable company employing people and producing for a world market. *Id.* at 503. In the instant case, two Debtor subsidiaries would survive, but at the cost of the demise of the parent corporation and the other Debtor subsidiaries. Additionally, there is no return to any unsecured creditor of the two subsidiaries if the sale is permitted. The

---

**2.** Citibank, N.A., First City National Bank of Houston, the Chase Manhattan Bank (National Association), the Toronto-Dominion Bank Atlanta Agency, Texas Commerce Bank National Association, MBank Dallas National Association (as assignee of MBank Houston National Association) and the Prudential Insurance Company of America under the Amended and Restated Term Loan Agreement, dated as of May 29, 1985. The purchaser of each subsidiary stated that he had arranged to finance his purchase from an undisclosed source.

Debtors' burden is to show that the § 363(b) sale will aid Debtors' reorganization. *Lionel, supra* at 1071. The Debtors admitted they cannot reorganize. Additionally, the case has only been on file since October 21, 1986.

■ A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale (other than the appeasement of major creditors) before the Bankruptcy Judge orders a § 363(b) sale. *Lionel, supra* at 1066, 1070. The rule adopted by the Fifth Circuit requires that a Judge determining a § 363(b) application expressly find from the evidence presented at hearing a good business reason to grant the application. *Continental supra* at 1226.

The *Lionel* Court found that the creditors committee's insistence on a sale was insufficient as a matter of fact because it was not a sound business reason, and insufficient as a matter of law because it ignored the equity interests to be weighed under Chapter 11. The Court listed guidelines for the Bankruptcy Judge in his duty to act to further the diverse interests of the debtor, creditors and equity holders:

1. The proportionate value of the asset to the estate as a whole;
2. The amount of elapsed time since the filing;
3. The likelihood that a reorganization plan would be proposed and confirmed in the near future;
4. The effect of the proposed disposition on future plans of reorganization;
5. The proceeds to be obtained from the disposition *vis-a-vis* any appraisals of the property;
6. Whether the disposition is by sale, use, or lease; and finally and, perhaps, most important,
7. Whether the asset is increasing or decreasing in value.

A helpful analysis is presented in *Continental*: Step 1. The assets must be the property of the estate under § 541 of the Bankruptcy Code, and there must be some articulated business justification for the sale, use or lease of the property. The Court cited *Lionel, supra,* and the factors to be weighed heretofore mentioned. If the above requirements are met, the Court proceeds to Step 2. Section 363(d) authorizes the transaction under § 363(b) "only to the extent not inconsistent with any relief granted under § 362(c), (d), (e) or (f)...." Section 363(e) provides that on the request of an entity having an interest in the property to be used, "the Court, with or without a hearing shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." Step 3 deals with a Chapter 11 Plan. A Chapter 11 Plan may not be circumvented by establishing its terms *sub rosa*. Thus, where a transaction specifies terms for adopting a reorganization plan, the Debtor may not bypass 11 U.S.C. § 1125, disclosure requirements; § 1126, voting requirements; § 1129(a)(7) "best interest of the creditors test;" or § 1129(b)(2)(B) absolute priority requirements. *Id.* at 1226. *See also Pension Benefit Guaranty Corporation vs. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 700 F.2d 935 (5th Cir.1983).

The *Continental* Court found that the assets in question were property of the estate, that there was sufficient business justification for their proposed use and that no adequate protection was requested under § 363(e). The Court recognized that fundamental reorganization "piecemeal" under § 363 made creditors' rights under the Code's protections meaningless. *Id.* at 1227. On the other hand, the Court stated that § 363(b) transactions postpetition and preconfirmation may be required by business considerations. Therefore, the Court held that where an objector to a § 363(b) transaction claims denial of the protection of a plan, disclosure statement and balloting, because approval is being sought pursuant to § 363(b) instead of as part of a reorganization plan, the Court is to consider the matter and if there has been such a denial, fashion appropriate protective mea-

**632**

sures. Therefore, the Court vacated the District Court's decision and remanded.[3]

### Conclusions

█ These cases were filed on October 21, 1986. There has scarcely been time for the formation of creditors committees and for a thorough evaluation by those committees of the assets and financial circumstances of each of the eight Debtors involved. The proceedings have been administratively consolidated under the heading of the parent, Crutcher.

The Court is of the opinion that these consolidated cases are being operated by the Debtors in close harmony with the Lenders for the benefit of the parent corporation (and presumably for the benefit of the principals of the parent corporation, who may have personal guarantees to the Lenders) and without regard for the creditors of the various subsidiaries. It also appears that the parent and the Lenders are attempting to rush this case so that there will not be appropriate time for an examination of each of the subsidiaries. A number of factors have led the Court to this conclusion, including:

1. These cases were filed on October 21, 1986 and the stock in one of the subsidiaries has already been sold.

2. The hearing on the sale of all of the assets of the two subsidiaries under consideration was held on December 15, 1986, less than two months after the case was filed. When the Court announced at the conclusion of the hearing that the Court wished to review the files and cases which had been cited by the parties, the attorney for the Debtors pointed out that the contracts involved contained a provision that if the sale were not closed by December 15, 1986 (the very day of the hearing!) that the purchasers would have an opportunity to withdraw. Undoubtedly, the attorney for the Debtors had input into the drawing of those contracts and knows that the Bankruptcy Courts need time to appropriately consider the matters which are presented to them. The placing of the short deadline in this contract only indicates an attempt to limit the review of the contract by the Court and the creditors.

3. The testimony presented at this hearing was by the Presidents of the two subsidiaries who are also the purchasers of the assets of those subsidiaries. This is obviously an insider transaction, which the Court must review with great care. The two officers of the parent who testified spent their time talking about the financial problems of the parent, and very little about the condition of these two subsidiaries.

4. At a subsequent hearing to extend the postpetition financing which had been previously approved in the consolidated proceedings, the attorney for the Lenders stated that if this Court denied the sale of the assets of the two subsidiaries, that the Lenders would immediately withdraw financing with respect to those subsidiaries. This blatant attempt to place pressure on the Court only serves to raise additional suspicions concerning the "cosy" relationship between the parent and the Lenders and to suggest that this case is being orchestrated not for the benefit of the unsecured creditors in these cases, but rather for the benefit of the Lenders and the principals of the parent corporation.

At the hearing, testimony was elicited that indicated both of these subsidiaries were operating at a positive cash flow. When the prospective purchasers were questioned by the Court as to why they felt they could operate these businesses more

---

**3.** The "property of the estate" involved was the cash which would be used to make the lease payments. It has been suggested that this novel use of § 363(b) (see *Continental supra* at 1225) could better have been handled as an authoriza-
tion to obtain credit under 11 U.S.C. § 364(b). Pronske, *Fifth Circuit Survey of Bankruptcy Law* to be published by the Texas Tech Law Review in January, 1987.

profitably than the Debtor, they both listed among their reasons the fact that payments would not have to be made to the parent corporation. It thus appears that the principal benefit of these sales would be the savings in payments to the parent. Such savings would also be available if the subsidiary were separately reorganized. These sales would benefit only the Lenders and, indirectly, the parent. On the other hand, the sale of these assets effectively prevents reorganization of the subsidiaries and destroys any possibility whatsoever of payments to the unsecured creditors of the subsidiaries.

No evidence was presented at the hearing on the value of the assets being sold, except for the self-serving statements of the purchasers. It may well be that the sales proposed represent the best possible price for the assets involved, but without other testimony, the Court is not in a position to approve the sales.

There was no evidence of any business justification for these sales from the standpoint of the parent. In fact, the party who negotiated these sales on behalf of the parent was not called as a witness and did not appear to be present at the hearing.

■ A part of the justification for the sales was that each subsidiary had guaranteed obligations of the parent to the Lenders and had pledged its assets to secure those obligations. The question was properly raised by Schroder that the propriety of these guarantees had not been properly examined, and there is a possibility that they were given without consideration. It is the conclusion of the Court that the administrative consolidation of these cases is not working to the benefit of the individual Debtors, and that steps should be taken to preserve the assets and business of the individual Debtors rather than concentrating on preserving the parent. The testimony of the officers of the parent was that there was no possibility of reorganization of the consolidated Debtors.

This Court relies heavily on the review and information supplied by a creditors committee. It appears that a creditors committee has been appointed in the consolidated case, but no appearance was made at the hearing by the creditors committee. It is possible that the committee had not had time to organize. The Court is disappointed that it was not furnished with the views of the creditors committee at this hearing.

■ The Debtors raised the issue of Schroder's standing to object to the sale. The Debtors point out that Schroder is the Indenture Trustee for the debentures issued by only one of the Debtors. These proceedings have been consolidated and it is the feeling of the Court that Schroder was a proper party to raise these issues. Additionally, the Court's file does not reflect a Certificate of Service by the Debtors showing the parties to whom notice of this hearing was given. It is quite possible that neither the Creditors Committee nor the creditors of either Teton or Colorado were given notice of the hearing. Under these circumstances, Schroder performed a valuable service by bringing these matters to the attention of the Court. Significantly, the Memorandum of Law submitted by the Lenders in support of the Debtors' Motion was sent to only 13 parties. If those were the only parties who received notice of the hearing on the Debtors' Motion, then the notice was inadequate.

For the foregoing reasons, the Court finds that the Debtors' Motion should be denied.

Order accordingly.[4]

**4.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to

Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.