**In re BKW SYSTEMS, INC., Debtor.**

**Bankruptcy No. 86–287.**

United States Bankruptcy Court, D. New Hampshire.

Jan. 7, 1987.

J. Michael Deasy, Hamblett & Kerrigan, P.A., Nashua, N.H., for plaintiff, Berton Group.

Morris Raker, William P. Stimson, Mary N. Peterson, Sullivan & Worcester, Boston, Mass., for defendants-debtors.

**ORDER ON DEBTOR'S VERIFIED MOTION FOR AUTHORITY TO ENTER INTO SOFTWARE DISTRIBUTION, DEVELOPMENT, AND MAINTENANCE AGREEMENTS**

JAMES E. YACOS, Bankruptcy Judge.

This case came on for continued hearing on December 29, 1986 concerning the Debtor's Verified Motion For Authority To Enter Into Software Distribution, Development, and Maintenance Agreements with Texas Commerce Information Systems, Inc. ("TCIS"), and objections thereto filed by Wang Laboratories, Inc., Security Pacific Corporation, and the Berton Group, Inc. In addition, various interested parties filed various memoranda and other pleadings in support and in opposition to the Debtor's Verified Motion. The court having received the parties' proffered evidence and considered the arguments of counsel, and all parties present having been heard, the court accordingly,

ORDERS, ADJUDGES and DECREES:

At the outset the court notes that its findings and conclusions which follow are made only for the purpose of the hearing on the above-described motion, that is, the court's findings and conclusions are concerned solely with the question of whether or not the court should approve the transaction which the debtor proposes with TCIS. The court's findings and conclusions herein do not constitute any final findings of fact for any other purpose in these proceedings, whether in the case in chief or in any adversary proceeding. For the instant purpose, the court need not make any final factual determinations, it simply has to make a general determination of what the various factors are, for and against the proposed transaction, and whether or not it should be approved.

At the hearing considerable discussion was had as to whether the proposed transaction constituted a "creeping plan of reorganization" violative of the ruling in *In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir.1986), and that therefore *as a matter of law* the transaction could not be

approved under the non-plan provisions of § 363 of the Bankruptcy Code. Since I conclude that the transaction should not be approved, on its merits, I need not grapple with that legal and procedural issue in this case. I do consider as a relevant "merit" or "demerit" the degree to which the transaction would restrict the debtor's options in formulating a plan, as well as consideration of the value received by the estate for any such restriction.

The court recognizes that in this case the chief objecting parties, Security Pacific Corporation and The Berton Group, are both in litigation with the debtor, that one of them at least has some competing products, and that for those reasons their opposition may be discounted somewhat as favoring their own interests, which may not coincide with that of the general creditor body. Be that as it may, and discounting their opposition accordingly, it still appears to the court that the record in this matter does not support approval of this transaction.

The court does not question that Texas Commerce is seriously interested in this project and would go forward in good faith to try to implement it. But the court also notes from the testimony and the documents offered that, looked at in the cold light of contractual obligations, there is no substantial commitment to develop or fund anything in terms of dollar minimums or any objective standard. The only up-front money that is at risk is $100,000. There is no evidence before this court that TCIS is in a position to, and will, service customers in other states so that there will be a boost to the debtor's marketing efforts in other states beyond the proposed exclusive arrangement in Texas.

TCIS has no track record at all in developing and marketing these products as an entity itself, at least from the evidence before this court. Moreover, the economic data presented to support the transaction is not very substantial in this court's judgment. No one seems to know how many target banks are left or are available in particular markets—it is changing constantly by mergers and acquisitions. The court can take judicial notice that the economy in Texas has been in a severe downturn in recent years.

It is also important to note that there is no evidence that alternatives to this transaction were explored by the debtor. The record indicates that the debtor has developed some valuable software, highly desireable if not unique, to banks in the data processing area. Thus, the question naturally occurs as to the alternative of getting outsiders interested in funding development and effective marketing of this software. Others might be interested but they may want to acquire the company, in return for their infusion of new capital. They also might believe that the software was valuable but that present management is not effective. As long as there is a debtor-in-possession, before the plan formulation stage, proposing a transaction like this, the court has no independent verification that present management is not taking the course more favorable to itself and less favorable to the creditor body in general. When done in the structure of a plan, with disclosure, the creditors can examine or get some information as to alternatives pursued, and as to why the proposed transaction is the best way to go, or the only way to go, and therefore is in the interests of the entire estate.

The court does not believe that there would be any realistic ability of the debtor to get an outside funder interested in acquiring this company with the software tied up, not only under the existing Security Pacific agreement, but under the proposed Texas Commerce agreement as well. The court may be wrong about that, but on the present record I am not satisfied that this debtor, if it entered into this agreement, plus the existing agreement with Security Pacific, would really have any ability to try to negotiate with outside parties to acquire this company and to fund a plan of reorganization.

Although there are other assets to be developed, they involve relatively low-level servicing functions which are not going to

excite outside parties or provide for a pay-out to creditors within a reasonable time period. If, as presently appears to the court, it is the software that is the real asset of this company, I hesitate to approve tying-up of that asset in the present context in which admittedly the party to the proposed contract is the only party with whom the debtor has negotiated.

Lastly, one has to ask what is the downside of not approving this transaction? The downside is that the debtor will have to go forward to submit a plan, which may incorporate this transaction if Texas Commerce still remains interested. The debtor is carrying itself on a cash basis so there is no immediate danger of collapse from failure to approve this particular transaction. It simply will put pressure on the debtor to come forward with a plan earlier than it otherwise might want to do. That is, unfortunately, the "name of the game" in many reorganization proceedings. This debtor has been in reorganization for six months. From the record it would appear that in another three months or so the debtor should be able to put forward a *comprehensive* plan with disclosure of the alternatives explored in formulating the same.

For all the above reasons, the court hereby denies approval of the transaction presently before the court, recognizing that the court in this kind of hearing has to make rather broad findings which are made for the purpose of determining whether this transaction should or should not be approved. They are not made, as I noted at the outset of this order, in terms of any ultimate findings that would be made in any confirmation hearing, or in any adversary proceeding, that may come before the court.