**In re WORK RECOVERY, INC., a Colorado corporation, Debtor.**

**In re WORK RECOVERY CENTERS, INC., an Arizona corporation, Debtor.**

**Bankruptcy Nos. 96–1640 TUC JMM, 96–1641 TUC JMM.**

United States Bankruptcy Court, D. Arizona.

Aug. 14, 1996.

C. Taylor Ashworth, Osborn Maledon, P.A., Phoenix, AZ, for Debtors.

Rob Charles, Lewis & Roca, Tucson, AZ, for Allsup, Inc.

Lowell Rothschild, Tucson, AZ, for Recovery Lenders, LLC.

Steven M. Cox, Martin P. Janello, Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C., Tucson, AZ, for MetLife.

Matthew Waterman, Korn Waterman, Tucson, AZ, Trudy H. Oppenheim, New Orleans, LA, for Bobby Roberts and Work Recovery Centers, Inc.

Roberta E. Kass, Atlantic Richfield Co., Los Angeles, CA, for ARCO.

Christopher Beard, Annapolis, MD, Nancy J. March, Streich Lang, Tucson, AZ, for BECA.

## MEMORANDUM DECISION AUTHORIZING SALE

JAMES M. MARLAR, Bankruptcy Judge.

A hearing on the debtor's Application for Sale of Real Property came on regularly for hearing on the 12th day of August, 1996. After consideration of the arguments, the administrative file, the pleadings surrounding this controversy, and applicable law, the Court finds, concludes and rules as follows:

### FINDINGS OF FACT

1. The debtor filed chapter 11 proceedings on May 29, 1996.

2. The debtor currently has, on file, a plan of reorganization, as well as a disclosure statement. These pleadings were filed August 5, 1996.

3. The debtor owns real property in Metairie, Louisiana, which it wishes to sell for $1,200,000 to the Maurice F. Eagan Family, L.L.C.

4. The debtor maintains that the property is surplus property, unessential to the debtor and unnecessary for the debtor's reorganization efforts.

5. The debtor has approximately $400,000 in equity in the property, with a secured creditor, MetLife, which is owed approximately $800,000. A sale will stop the running of interest on MetLife's $800,000 debt.

6. The Court asked for higher or better bids on the Louisiana property, in open court on August 12, 1996, and there were no other bidders for the property.

7. Creditor Roberts, who objected to the sale, claims no ownership interest in the property, and is a tenant with a leasehold interest in the property.

8. Collateral litigation, concerning matters unrelated to this real property, is pending in another forum between Roberts and the debtor.

9. Creditor MetLife objected to the sale unless it is paid from the proceeds thereof.

10. The property contains 31,500 square feet, 17,800 of which is found in an improved building located on the property.

11. Besides the Metairie, Louisiana location, the debtor also maintains its principal offices in Tucson, Arizona, leases work rehabilitation centers in California, Colorado and Texas, and joint ventures facilities in Wisconsin, Kentucky and South Carolina.

12. The debtor has unsecured creditors totalling $1,170,723, priority creditors with debt of $126,708, and secured claims of $2,955,000.

13. A sale of this location will result in $800,000 in secured debt being reduced, will generate $400,000 for administrative and priority claims, and possibly some unsecured claims, and will not impact the debtor's operations or ability to reorganize, since the Louisiana location is not necessary to the debtor's operations and is regarded as surplus property in its inventory.

14. The objecting creditor, Roberts, was unable to articulate any reason for opposition to the sale, except to opine that such sale is premature and should rightly be included only in a plan of reorganization, rather than be sold in a § 363 setting. To sell now, argues Roberts, would be to condone a prohibited *sub rosa*, or "creeping" plan of reorganization.

15. MetLife simply asked to be paid from the proceeds.

## DISCUSSION OF THE LAW

Creditor Roberts argues that the sale should not be approved, as it would involve a type of "creeping reorganization" plan which has been disapproved by certain courts.

The principal cases which discuss this concept are *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir.1983), *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983) and *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir.1986). Each of those cases were decided on the basis of their specific facts. The *Lionel* case describes the background of bankruptcy sales, from 1867 to the enactment of the current Bankruptcy Code in 1978. Factually, the sale proposed in the *Lionel* case was much different than that proposed here. In that case, the debtor sought to sell "its most valuable single asset," 82% of the common stock in a related, profitable entity. The stock represented 34% of Lionel's total assets, and was worth approximately $50 million. The court held that the debtor did not make an adequate showing that the sale was in the best interests of the estate. Additionally, the court opined that large sales proposed outside of a reorganization plan, such as that proposed in *Lionel,* would leave the investors entirely to the mercy of the debtor and its creditors. The *Lionel* appeal to the Second Circuit was

taken by equity investors, who were fearful that the company's equity would be used to pay only the creditors, leaving the shareholders with nothing to reorganize.

The *Braniff* case was decided by the Fifth Circuit. In that case, it reversed a global settlement between the debtor, the United States, and the Unsecured Creditor's Committee. Under the guise of a "settlement" and § 363 sale, those parties agreed to dismember and reallocate the overwhelming majority of the debtor's assets. Such an effort, the circuit found, was not a true sale and went far beyond the limited issues commonly found in scrutinizing sales. It was, in practical effect, a reorganization plan without the safeguards of disclosure, voting and application of the confirmation standards. The rationale for the Circuit's holding was crystal clear:

> Were this transaction approved, and considering the properties proposed to be transferred, little would remain save fixed based equipment and little prospect or occasion for further reorganization. These considerations reinforce our view that this is in fact a reorganization.

■ With *Lionel* and *Braniff* as a backdrop, the Fifth Circuit was again confronted with the issue of "how far a debtor-in-possession can stretch the bankruptcy laws to undertake transactions outside a plan of reorganization." In *Continental Air Lines,* Judge Gee, author of the *Braniff* opinion, again wrote for the court. In *Continental,* the debtor, utilizing the "lease" provisions of § 363, gained approval to lease two DC–10 aircraft to strengthen and increase the asset value of its Pacific routes. This commitment was a 10–year, $70 million transaction. Creditors to whom the debtor owed $30 million objected and appealed, claiming that the proposed transaction would "avoid and shortcut the process that leads to a plan of reorganization." The *Braniff* court recognized that § 363 had a purpose, that is, to authorize post-petition sales or leases when required, and not turn each hearing into a "mini-hearing on plan confirmation." *Id.* at 1228. In making such determination, a bankruptcy

court must consider several factors, among them:

1.  has the debtor articulated a business justification for the request;

2.  is it good business judgment for the debtor to enter into the proposed transaction;

3.  will the proposed transaction further the diverse interests of the debtor, creditors and equity holders alike;

4.  is the asset increasing or decreasing in value;

5.  does the proposed transaction specify terms for adoption of the reorganization plan (as in Braniff); and

6.  will approval of the proposed transaction effectuate a *de facto* reorganization in such a "fundamental fashion" as to render creditors' rights under the other provisions of chapter 11 meaningless.

A corollary of these rules also placed the burden upon the objector to "specify exactly what protection is being denied." *Id.* at 1228.

Although the Fifth Circuit remanded the case for further consideration consistent with its opinion, the evolution of the "creeping," "*sub rosa*" and "piecemeal" plan doctrine become subject to careful analysis with rational standards, which were well-expressed in the *Continental* case.

■ Therefore, armed with the foregoing legal principles, this court is in a position to apply the law to the facts of this case.

Here, the debtor wishes to sell a surplus property which is not essential to its reorganization effort. In so doing, it will reduce its secured debt by 27%. At the same time, a sale will cut off accruing interest, and the debtor will net approximately $400,000. That sum would enable it to pay 100% of its priority debt and 23% of its unsecured debt alone. This result will not interfere with the debtor's reorganization, will trim the debtor's secured creditors by $800,000, and has no other conditions which will impact on the reorganization plan. In other words, the sale has no "strings" or "catches." Creditors and equity alike can eventually vote to approve or reject the plan on its merits. Moreover, no creditor or other interested party has maintained that the sale price of $1.2 million was anything other than fair market value of the asset. Finally, approval of the sale will not, insofar as this court can fathom, adversely affect creditors' rights to participate in the reorganization process in any "fundamental fashion."

The Court is satisfied that the sale is fair and arms-length, and that it is in the best interests of the estate. The evils associated with "creeping" plans are not present here. The sale is therefore approved.

Finally, with regard to MetLife's objection, it will be overruled because the sale price is greater than the amount of MetLife's lien claim, and it will be paid in full from the proceeds. 11 U.S.C. § 363(f)(3) and (5).

### RULING

1.  The sale of the debtors' property located in Metairie, Louisiana, to the Maurice Eagan Family, L.L.C. is approved;

2.  That, upon closing, the debtor shall pay the undisputed portion of the MetLife secured claim from the proceeds realized from the sale, and shall impound the balance subject to a resolution as to any disputed amounts owed to MetLife;

3.  MetLife shall, upon the closing, present the debtor with a complete statement and breakdown of the claimed principal, interest, default interest, costs and attorneys' fees, so that the debtor may have adequate notice of the amounts claimed by MetLife. Since MetLife is oversecured, the debtor is authorized to pay, from the closing, any undisputed amounts to MetLife, but shall impound the balance (up to the amount of MetLife's proposed payoff claim), subject to further Orders of this Court. The debtor shall file any objections to the balance of MetLife's claim within 20 days of the closing of the sale transaction.

4.  The objections of creditors Roberts and MetLife are overruled.

5.  Within 15 days, the debtor's attorneys shall lodge an appropriate form of Order.