Alvin C. COPELAND, et al.

v.

MERRILL LYNCH & CO., INC., et al.

Civ. A. Nos. 92–570, 92–3961 and 93–1297.

United States District Court,
E.D. Louisiana.

Jan. 4, 1994.

Order Granting Summary Judgment for
Merrill Lynch Feb. 22, 1994.

See also, 162 B.R. 743.

Benjamin R. Slater, III and Mark E. Van-Horn, Monroe & Lemann, New Orleans, LA, for Alvin C. Copeland.

William Forrester, Jr. and MaryAnn Liuzza Cote, Lemle & Kelleher, New Orleans, LA, for Merrill Lynch & Co., Inc.

McNAMARA, District Judge.

Before the court is the "Motion for Partial Summary Judgment on the Issue of Defendant Merrill Lynch & Co., Inc.'s Liability" filed by Plaintiff, Alvin C. Copeland ("Copeland") in Civil Action No. 93–1297 of this consolidated matter. Defendant, Merrill Lynch & Co., Inc. ("Merrill Lynch"), filed a memorandum in opposition. The Motion is before the court on briefs without oral argument. Having considered the memoranda of counsel and the applicable law, the court now rules.

1. In re: Al Copeland Enterprises, Inc., No. 91–12575–FM, United States Bankruptcy Court,

## I. BACKGROUND

The underlying Bankruptcy matter[1] was commenced as a voluntary Chapter 11 case by debtor, Al Copeland Enterprises, Inc. ("ACE") in response to an involuntary petition which had been filed by ACE's various creditors, including Merrill Lynch and the Canadian Imperial Bank of Commerce, Inc. ("CIBC"). During the pendency of the ACE bankruptcy, Copeland, Merrill Lynch, CIBC and ACE negotiated to confect a consensual plan of reorganization. As a precondition to any consensual plan, CIBC demanded that ACE bring current all arrears of pre-petition and post-petition interest. (*See* Plaintiff's Original Memorandum, p. 2).

On July 16, 1991, ACE filed a Motion requesting that the Bankruptcy Court authorize it to borrow certain sums from CIBC to bring current the arrearage of pre-petition and post-petition interests ("Debtor-in-Possession (DIP) Financing Motion"). This Motion was set for hearing before the Bankruptcy Court on July 31, 1991.

On July 31, 1991, representatives of ACE, the Unsecured Creditors Committee, Copeland, CIBC and Merrill Lynch appeared before the Bankruptcy Court for the hearing on the "motion ... to approve the debtor-in-possession financing facility of $30 million." (*See* Plaintiff's Exhibit No. 1, Transcript of July 31, 1991 hearing, p. 5). Mr. J. Ronald Trost, who represented CIBC, informed the Bankruptcy Court that the parties had agreed to withdraw objections to the DIP Financing Motion because the parties had agreed to a DIP financing arrangement. Mr. Trost also announced that the parties had agreed to a proposed framework for a potential plan of reorganization and relayed the plan's general terms and conditions in open court. Mr. Trost advised the Bankruptcy Court that written settlement documents would be filed in the next three weeks. (*Id.* at 5).

Following Mr. Trost's announcement, the Bankruptcy Court polled the parties to determine their respective positions. Repre-

Western District of Texas, Austin Division.

sentatives for ACE, the Creditors Committee, Copeland, CIBC and Merrill Lynch each agreed with the announced DIP Financing arrangement and expressed their willingness to negotiate in good faith a reorganization plan for ACE based upon the general terms and conditions outlined by Mr. Trost. Subsequently, the parties could not reach final agreement with respect to all aspects of the deal and thus a confirmable joint plan of reorganization based upon the parameters outlined during the July 31 hearing did not result.

The Bankruptcy Court ultimately confirmed the fourth reorganization plan that was alternatively proposed by CIBC. Following the confirmation hearing on the CIBC plan, the Bankruptcy Court orally made Findings of Fact, one of which was that Merrill Lynch had breached the July 31, 1991 Agreement. (*See* Plaintiff's Exhibit 6, Transcript of October 20, 1992, Confirmation Hearing, pp. 95–100).

In this adversary proceeding,[2] the Bankruptcy Court issued a Memorandum Opinion on Jurisdiction (dated February 10, 1993) and incorporated the following findings of fact and/or conclusions of law which the court had orally put on the record on October 20, 1992, as part of its rationale for confirming the CIBC plan:

. . . . .

2. "The evidence, to me, was clear that Merrill Lynch made the decision to not go forward with the agreement that all the parties announced in open court on that day on the basis of their internal decision that the plan would not be feasible." Page 96 of transcript at lines 17–21.

3. "Merrill had an obligation to go forward with the agreement and it did not, and that was a breach of that agreement in my opinion." Pages 96–97 of transcript at lines 24–1.

. . . . .

5. "Mr. Copeland put on evidence through Mr. Jenkins and Talluto that the 7/31 agreement could have been consummated." Page 98 of transcript at lines 2–4.

6. "All that means is that there are causes of action that may exist, clearly that might exist in favor of Mr. Copeland. And just as clearly, this plan does not affect that cause of action one iota." Page 98 of transcript at lines 7–10.

7. "I mean Merrill breached their agreement, but that doesn't mean that they become automatically responsible for all claims and all interests and that they automatically have their claim expunged." Page 100 of transcript at lines 3–6.

8. "The record that has been established falls short of determining that Merrill's breach of the agreement, standing alone by itself, was an unconscionable act for which they should have their total claim expunged and then be liable to the estate on top of it for more dollars." Page 100 of transcript at lines 11–15.

(*See* Plaintiff's Exhibit 9, Memorandum Opinion on Jurisdiction, pp. 4–5).

In his Complaint, Copeland originally sought: (1) specific performance from CIBC and/or Merrill Lynch, i.e., performance of their contractual duties pursuant to the July 31, 1992 Agreement (Count 1); and (2) money damages (Count 2). However, before the matter was transferred to this court, the Austin Bankruptcy Court found that the issue of specific performance was moot because the court had confirmed the CIBC plan. The Bankruptcy Court also found that the damages aspect of this adversarial claim was non-core and therefore it lacked subject matter jurisdiction to decide damages. (*See* Plaintiff's Exhibit 9, Memorandum on Jurisdiction).

Merrill Lynch filed an objection to the Bankruptcy Court's Memorandum Opinion on Jurisdiction pursuant to Bankruptcy Rule 9033. The Bankruptcy court denied this objection and ordered that Copeland's adversarial proceeding be transferred to the Eastern District of Louisiana. (*See* Plaintiff's Exhibits 10 & 11, Bankruptcy Orders).

---

**2.** This adversary proceeding originated in the Bankruptcy Court, Western District of Texas, Austin Division, as Adversary Proceeding No. 92–1186 FM.

Merrill Lynch then filed with the United States District Court for the Western District of Texas, Austin Division, a Motion for Leave to Appeal the Bankruptcy Court's denial of Merrill Lynch's Rule 9033 objection and transfer order. The district court in Texas found that the Bankruptcy Court had subject matter jurisdiction not only over the specific performance claim (a core proceeding), but also over the damages claim (a non-core proceeding) based upon supplemental jurisdiction. Thus, the district court ruled that the Bankruptcy court was empowered to transfer the proceeding to the United States District Court for the Eastern District of Louisiana. (*See* Plaintiff's Exhibit 12, Judge Sam Sparks' Order, No. 93–167 (W.D.Tx., June 30, 1993)).

Copeland now brings this Motion for Summary Judgment claiming that the complementary doctrines of collateral estoppel and law of the case preclude Merrill Lynch from relitigating its liability for breach of contract. In Plaintiff's original memorandum, Plaintiff claims that his suit for breach of contract is based on Defendants' [Merrill Lynch's and CIBC's] breach of a joint agreement for the consensual Chapter 11 reorganization of ACE and that the terms of the agreement were announced in open court and agreed to by the parties on July 31, 1991. (*See* Plaintiff's original memorandum, p. 1).

However, in Plaintiff's Supplemental Memorandum in Response to Court Order,[3] Plaintiff claims he was not a party to the July 31, 1991 agreement and that his agreement was separate and contractual. Plaintiff then announced that his breach of contract claim seeks enforcement of the "Copeland Agreements," which consist of: (1) the non-competition agreement; (2) the new supply agreement; (3) the settlement agreement; and (4) the formula and recipe agreement.

For the reasons stated below, the court finds that Merrill Lynch is not precluded from litigating whether it is liable to Plaintiff for allegedly breaching the "July 31, 1991

Agreement," the "Copeland Agreements" or a hybrid thereof. Thus, Plaintiff's Motion for Partial Summary Judgment must be denied.

## II. LEGAL ANALYSIS

*1. The terms of the alleged "July 31, 1991 Agreement" were never specifically determined by the Bankruptcy Court.*

■ In Plaintiff's Original Memorandum, Plaintiff states that the terms of the alleged joint agreement for the consensual Chapter 11 reorganization of ACE were announced in open court by all parties. (*See* Plaintiff's Original Memorandum, p. 1). However, the Bankruptcy Court never had before it in writing any element of the joint plan supposedly resulting from the July 31, 1991 hearing. Further, although the Bankruptcy Court found that Merrill Lynch breached the "July 31, 1991 Agreement," the Bankruptcy Court never specifically set forth the exact terms of the "agreement."

Plaintiff has also failed to state the exact terms of the alleged agreement with specific references from the record. On pages 2–4 of Plaintiff's Supplemental Memorandum in Response to Court Order,[4] Plaintiff lists what he purports to be the terms of the alleged "July 31, 1991 Agreement." The court finds that Plaintiff has combined those terms referenced in Mr. Trost's July 31, 1991 outline of the proposed framework for a plan of reorganization with the following two terms for which Plaintiff provides no authority from the July 31, 1991 proceeding or otherwise:

> k. Copeland would continue to have the right to maintain one (1) franchise free of royalty obligations, which right would be held by Copeland's son.

> m. A non-debtor affiliate of Copeland would enter into a new supply agreement with the New Company, replacing the existing supply agreement.

the schedules and exhibits to the Copeland Agreements. (*See* Minute Entry, Rec. Doc. No. 107).

**4.** *See* fn. 3, *supra.*

(*See* Plaintiff's Supplemental Memorandum in Response to Court Order, pp. 2–3, items k and m).

As to those terms that Plaintiff references to the July 31, 1991 hearing, the court finds that some terms may have contemplated some cash payments to Copeland, but there is no evidence that any party understood that such payments were to come from Merrill Lynch. Further, the term referenced as item "h" shows on its face that substantial negotiation remained. Item h states:

> h. Up to 60 million would be contributed to [ACE] pursuant to an agreement negotiated among Merrill Lynch, CIBC and the other secured lenders, to be repaid out of cash flow and asset sales of the New Company.

(*Id.* at p. 3, item h).

As shown in the full transcript of the July 31, 1991 hearing before the Bankruptcy Court, it is clear that the only "agreement" presented to the Judge was an agreement between the central players in the bankruptcy proceeding to go forward on a debtor-in-possession financing agreement. The following exchange between the representative of the Church–International Franchise Association ("CIFA") and the Bankruptcy Court clearly indicates that there existed no "agreement" on any plan of reorganization and that the Bankruptcy Court Judge recognized that lack of agreement:

> MR. WILEY: ... we likewise have had an opportunity to review the plan, and although there is goodness and life [sic] among the parties, we assure the Court that CIFA has substantial concerns regarding confirmability. It appears that CIFA will be the party that will have to demonstrate that the emperor wears no clothes, and we reluctantly would be taking on that obligation. We certainly hope that we can negotiate with all the parties and interests to obviate some of the concerns, but we certainly have some substantial confirmability questions to raise regarding the payment to Mr. Copeland that have been addressed by Mr. Trost. We contend that they may be considered to be disguised distributions in respect with his interest, that there's no evidence of evalua-

tion of 35 million plus that could be applied to the formula which is subject to the liens of the secured creditors already and is being subjected to the additional liens today that this court's proven [sic, approved].

> So there are substantial issues here that if there is a consenting—or dissenting, excuse me, class that is not satisfied in full that this plan may not be confirmable, and we certainly didn't want our silence to not be registered in this circumstance.

> THE COURT: Okay. Well, I don't think that they had represented that you had yet agreed to the plan but that you had agreed to the [debtor-in-possession] financing that was going to be requested to be authorized, and I think that's exactly what you did.

> MR. WILEY: That's true, Your Honor.

(*See* July 31 Tr. at pp. 23–24).

The record further demonstrates that the parties expressly recognized that continued negotiation was necessary to formulate any consensual plan to be proposed. (*See* July 31 Tr. at p. 17). At most, the "July 31 Agreement" proposed an agreement between the parties to attempt to negotiate a modification of the previously-filed plan of ACE, which subsequently was withdrawn and became void and of no effect.

■ In other words, the alleged "July 31, 1991 Agreement" was merely an agreement to agree, rather than a binding agreement. An agreement to agree in the future is unenforceable as a matter of law under the law of Texas, where the alleged agreement was made. *See e.g., Weitzman v. Steinberg*, 638 S.W.2d 171 (Tex.App.1982); *Foster v. Wagner*, 343 S.W.2d 914 (Tex.Civ.App.1961).

■ Further, an agreement to agree on a joint plan of reorganization is unenforceable until "the parties and the District Court ... scale the hurdles erected in Chapter 11." *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir.1983), *citing* 11 U.S.C. § 1125 (re disclosure requirements), § 1126 (re voting), § 1129(a)(7) (re best interest of creditors test), § 1129(b)(2)(B) (re absolute priority rule); *accord, In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986).

*2. The Bankruptcy Court never decided who the parties were to the alleged "July 31, 1991 Agreement."*

■ An action for breach of contract requires, as a threshold, a showing of contractual privity between the parties. *See e.g., C & C Partners v. Sun Exploration and Prod. Co.,* 783 S.W.2d 707, 721 (Tex.App. 1989). However, in addition to never setting forth the specific terms of the alleged "July 31, 1991 Agreement," the Bankruptcy Court also never decided who the parties were to the "Agreement" or whether there was contractual privity between Copeland and Merrill Lynch with regard to the "Agreement." There is also no evidence that the Bankruptcy Court determined what the obligations of Merrill Lynch (in contrast to ACE) were under the "Agreement."

Notwithstanding the Bankruptcy Court's lack of findings regarding contractual privity between Plaintiff and Merrill Lynch, Plaintiff himself now contends in his Supplemental Memorandum in Response to Court Order that he lacks privity to the alleged "July 31, 1991 Agreement." Therefore, as a matter of law, Plaintiff has no standing to sue for breach of the alleged "July 31, 1991 Agreement" even if the specific terms of the alleged "July 31, 1991 Agreement" could be determined.

■ Finally, to the extent that the Bankruptcy Court found that Merrill Lynch breached the "July 31, 1991 Agreement," this court finds that the Bankruptcy Court "consider[ed] the merits of the breach of contract claim owned *by the estate*," and not by Plaintiff. (*See* Plaintiff's Exhibit No. 9, Bankruptcy Court's Memorandum on Jurisdiction, p. 4) (emphasis added). "Stated another way, the [Bankruptcy] Court had to determine if the release of the estate's breach of contract claim against Merrill and CIBC under the CIBC Plan was in the estate's and its creditors' best interest under § 1129(a)(7)." (*Id.*). The Bankruptcy Court explained that:

> [M]y assessment of the rights of this estate against Merrill and against CIBC are that those rights, which is a lawsuit, would not result in a recovery in excess of what

this estate's getting. I don't know how to say it any differently.

> Maybe there could have been a better result, maybe the unsecured creditors could have gotten a hundred cents on the dollar by reason of the breach of the July 31, deal, but an overwhelming majority of them voted in favor of the plan, and that's a knowing acceptance. They're not objecting to compromise. We've got compromise being objected to by a common shareholder. And I don't think that the cause of action is such that it would flow down—the results of a successful prosecution of that cause of action would flow down to equity. I mean that Merrill breached their agreement, but that doesn't mean that they become automatically responsible for all claims and all interests and that they automatically have their claim expunged.

> I think one guideline ... that the Fifth Circuit would want me to look at is whether or not the action was unconscionable. Why would you look at any different standard post-petition than you would pre-petition? And there's no—let's put it another way: The record that has been established falls short of determining that Merrill's breach of the agreement, standing alone by itself, was an unconscionable act for which they should have their total claim expunged and then be liable to the estate on top of it for more dollars.... I don't mean to preclude by that there may not be other claims by third parties against Merrill that may be judged by different standards, but insofar as bankruptcy is concerned and the claims of this estate and the compromise that's put on the table, I have the obligation to weigh one side against the other, and my weighing of the facts is that for this estate compromise is best.

(*See* Plaintiff's Exhibit No. 6, Confirmation Hearing, pp. 99–100). Therefore, this court concludes that the issue of Merrill Lynch's contractual obligations vis-a-vis Plaintiff was not before the Bankruptcy Court during the confirmation process.

*3. The Bankruptcy Court made no findings as to the specific terms of the "Copeland*

*Agreements" and their schedules and exhibits.*

■ The record fails to reveal that the Bankruptcy Court made a finding regarding the "Copeland Agreements" which Plaintiff now claims he seeks to enforce in his breach of contract claim. In fact, there is no support in the record that the Bankruptcy Court ever considered the Copeland Agreements and their substantial schedules and exhibits when the Bankruptcy Court found that Merrill Lynch breached the "July 31, 1991 Agreement."

This court cannot say that the Bankruptcy Court's finding that Merrill Lynch breached the "July 31, 1991 Agreement" necessarily means that Merrill Lynch also breached the Copeland Agreements which were apparently formulated after the July 31, 1991 hearing. However, if the Copeland Agreements arose from the alleged "July 31, 1991 Agreement," Plaintiff lacks standing to sue on the Copeland Agreements because Plaintiff contends he lacks privity to the "July 31, 1991 Agreement."

Further, notwithstanding any discussion of whether the "Copeland Agreements" were part of the alleged "July 31, 1991 Agreement," the court finds that the "Copeland Agreements" in and of themselves were not complete and final when Plaintiff agreed to them on September 26, 1991. Upon receiving the September 26, 1991 letter from Plaintiff's attorney and learning of a Wall Street Journal article in which Plaintiff allegedly stated that a "definitive agreement" had been reached with Merrill Lynch, Merrill Lynch's counsel responded on September 27, 1991, emphasizing to Plaintiff the unresolved status of the negotiations:

Merrill Lynch disagrees with the "definitive agreement" characterization of negotiations between Copeland and Merrill Lynch, as published in today's Wall Street Journal.

As you know, the due diligence process has been held up by the company [ACE] and is a critical part of Merrill Lynch's credit decision. In addition, no significant management enhancement is in place, Merrill Lynch has not yet had a chance to review and comment upon the revised schedules received this morning, and Merrill Lynch has not yet seen, much less reviewed and negotiated, any drafts of the exit financing documentation with the secured lenders. Furthermore, Merrill Lynch's ultimate vote on a plan of reorganization is subject to resolution of these open issues in a manner satisfactory to Merrill Lynch in final approval by Merrill Lynch's executive committee.

(*See,* Letter from John D. Morrison, Jr. to Richard P. Wolfe, by fax, dated September 27, 1991, attached as Exhibit B to Merrill Lynch's Reply Memorandum to Plaintiff's Supplemental Memorandum in Response to Court Order).

The court also finds that the schedules and exhibits to the Copeland Agreements were not agreed upon or finalized by the parties. These schedules and exhibits represented vital and material terms to the Copeland Agreements, as they stated the actual persons subject to and the scope of the draft Non–Compete Agreement, the products subject to the draft New Supply Agreement, and the product recipes to be assigned under the draft Formula and Recipe Assignment Agreement, among other matters.

Prior to September 20, 1991, Plaintiff's counsel prepared and circulated certain drafts of the schedules for the parties' review and comment. On August 19, 1991, Plaintiff's counsel provided Merrill Lynch with incomplete drafts of certain schedules. Merrill Lynch, in turn responded with several written comments. (*See* August 23, 1991, Shearman & Sterling Memorandum, attached as Exhibit D to Merrill Lynch's Supplemental Memorandum).

On September 20, 1991, Merrill Lynch transmitted the Copeland Agreements to Plaintiff, excluding the unresolved schedules and exhibits, and explained that the drafts "represent Merrill Lynch's final position with respect to the matters to which they relate." (*See* Memorandum from John Morrison dated September 20, 1991, attached as Exhibit E to Merrill Lynch's Reply Memorandum). Merrill Lynch stated that it needed to receive and review "final and complete sched-

ules to the agreements" within six days. (*Id.*)

On September 26, 1991, Plaintiff's counsel, Richard Wolfe, provided Merrill Lynch a draft set of these schedules. (*See* September 26, 1991 R. Wolfe letter to J. Morrison, attached as Exhibit F to Merrill Lynch's reply memorandum). In this same letter, Mr. Wolfe further admitted that the negotiation process was still not complete with respect to certain key schedules.

By memo dated November 15, 1991, Merrill Lynch's attorneys forwarded general comments about open issues in the schedules and attached "a list of items and information that Merrill Lynch need[ed] to receive before [it could] move forward to complete the schedules...." (*See* Shearman and Sterling Memorandum to Richard P. Wolfe and Aniko Kiraly dated November 15, 1991, attached as Exhibit G to Merrill Lynch's Reply Memorandum). The court therefore finds that Merrill Lynch never manifested assent to the revised terms of the Copeland Agreements and their schedules.

### III. CONCLUSION

Based on the foregoing, the court finds that the principles of collateral estoppel, law of the case and res judicata do not preclude Merrill Lynch from litigating whether or not it is liable to Plaintiff for breaching the alleged "July 31, 1991 Agreement," the "Copeland Agreements," or a hybrid thereof. Accordingly;

IT IS ORDERED that Plaintiff's "Motion for Partial Summary Judgment on the Issue of Merrill Lynch's Liability" be and is hereby **DENIED**.

### ORDER GRANTING SUMMARY JUDGMENT

The following motions, filed in Civil Action No. 93–1297 of this consolidated matter and set for hearing on February 16, 1993, are before the court on written briefs without oral argument:

(1) Motion for Summary Judgment filed by Merrill Lynch & Co., Inc. ("Merrill Lynch") and opposed by Plaintiff, Alvin C. Copeland ("Copeland"); and

(2) Motion for Reconsideration filed by Plaintiff Copeland and opposed by Merrill Lynch.

On January 4, 1994, this court entered a Minute Entry denying Plaintiff Copeland's "Motion for Partial Summary Judgment on the Issue of [Merrill Lynch's] Liability." (*See* Rec.Doc. No. 121). The court incorporates herein the "Background" and "Legal Analysis" contained in that Minute Entry to now conclude that there are no genuine issues of material fact and Merrill Lynch is entitled to Judgment as a matter of law. More specifically, the court concludes that Merrill Lynch has no liability for breach of the "July 31, 1991 Agreement," the "Copeland Agreements," or a hybrid thereof.

Having reviewed de novo the voluminous record of the underlying bankruptcy matter, together with all of the pleadings and memoranda filed with the United States District Court for the Western District of Texas and with this court, the court finds that there is a complete factual record upon which to rule on Merrill Lynch's motion. Further, there has been ample time for discovery but Copeland has failed to make a showing sufficient to establish the existence of elements essential to his case and on which he would have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Accordingly;

IT IS ORDERED that Merrill Lynch's Motion for Summary Judgment be and is hereby GRANTED, dismissing Copeland's claims against Merrill Lynch in Civil Action No. 93–1297; and

IT IS FURTHER ORDERED that Copeland's Motion for Reconsideration be and is hereby DENIED.