### In re Clarita Garcia DeAranda ALLISON, Debtor.

### Bankruptcy No. 11–83–01310 MA.

United States Bankruptcy Court, D. New Mexico.

March 16, 1984.

Nathan H. Mann, Albuquerque, N.M., for Safeco and Southwest Toro.

Michael Guest, Albuquerque, N.M., for Sentry Ins.

Louis Puccini, Jr., Albuquerque, N.M., for debtor.

### MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter is before the Court upon the debtor's application, pursuant to Section 363(b) of the Bankruptcy Code for approval of a proposed lease of substantially all of the debtor's property.

This chapter 11 proceeding was filed on November 18, 1983. Thereafter, on December 13, 1983, the debtor filed an application for approval of a proposed lease between the debtor and a Mr. Ed Southwell.

The debtor's sole asset is a piece of real property comprising approximately 2.3 acres upon which is located a building. A substantial portion of the building was constructed in the late 1800's and is of historical value to the city and to the state. The debtor lives in a more recently constructed portion of the building. The part of the building with historical value is unoccupied and has been substantially damaged by fire. At the request of the parties objecting to the proposed lease and with the debtor's consent, the Court viewed the premises. Both from the testimony presented at trial and from the Court's own examination, the portion of the building which is proposed to be leased requires substantial amounts of work before it would be usable for any purpose.

The debtor proposes to lease this portion of the building along with approximately 1½ acres of the property to Mr. Southwell. Mr. Southwell has had some experience in developing historical sites. The testimony at the hearing indicates that Mr. Southwell and some of his associates have invested a considerable amount of time and some money in completing the preliminary work and plans to redevelop the property. If this lease is approved, Mr. Southwell and his associates intend to present their redevelopment plans to several restauranteurs of "substantial restaurant and financially sound backgrounds." If such an interested person can be found, then financing would be arranged, renovation of the building completed and a restaurant opened on the premises. If no such person can be interested in the project by Mr. Southwell and his associates, the lease provides that it may be terminated by Mr. Southwell and his associates within six months of the date of Court approval. Mr. Southwell and his associates would intend to sublease the premises to a restaurant operator, with the Court having approval of the sublessee. If

the sublessee is approved by the Court, it is contemplated under the terms of the lease that the debtor would receive $2,000.00 per month as a lease payment for the premises. The lease also requires that the debtor to allow the lessees to grant a first mortgage on the property to secure payment to a financing institution for the funds advanced for the proposed renovation. The estimate of such amount runs between $400,000.00 and $600,000.00.

The lease has been objected to by Century Insurance Company, the largest unsecured creditor of Mrs. Allison and by Safeco Insurance Company and Southwest Toro, other creditors of Mrs. Allison. These parties became creditors of the debtor when a fire started on the premises of Mrs. Allison and apparently with her permission spread to a neighboring building, causing substantial damage. The debtor was not insured and the above referenced parties obtained judgment against the debtor in a state court proceeding. Of the total of approximately $156,000.00 of unsecured claims, these creditors' claims total $150,-000.00. There are a total of nine creditors of this debtor, all of whom are unsecured.

At the conclusion of the hearing, the Court asked the parties to brief the question of whether or not the Court could or should approve this lease prior to the filing and confirmation of any plan of reorganization.

Neither the parties nor the Court has found a case directly on point. The cases which provide the closest analogy are those cases dealing with a sale of substantially all of a chapter 11 debtor's assets prior to confirmation of a plan of reorganization.

■ The clear weight of authority authorizes the sale of all or substantially all of the debtor's assets pursuant to Section 363(b) in a chapter 11 proceeding even absent a disclosure statement, plan, and vote of the creditors. *In re WHET INC.*, 12 B.R. 743 (Bkrtcy.Mass.1981), *In re Coastal Cable TV Inc.*, 24 B.R. 609 (Bkrtcy.App. 1st Cir.1982) *In re Mesta Machine Co.* 30 B.R. 178 (Bkrtcy.W.D.Pa.1983) *In re Ancor*

*Exploration Company,* 30 B.R. 802, 10 B.C.D. 1025 (D.C.N.D.Okl.1983).

Although the case of *In re White Motor Credit Corp.,* 14 B.R. 584 (Bkrtcy.N.D. Ohio 1981) has been cited for the proposition that a sale of substantially all of the assets of the debtor should not be made absent confirmation of a plan of reorganization which provides for such sale, the Court in the *White Motor* case found an emergency exception to such holding and authorized the sale of substantially all of the debtor's assets absent such a confirmed plan.

The emergency found by the Court was that if the sale did not take place there was a strong likelihood of a substantial monetary loss to the debtor's estate, although in the Court's view, that situation had been brought about to a large extent by the actions and inactions of the debtor-in-possession.

The *White Motor* Court found that this constituted an emergency significant enough to authorize the sale of property even having found that it was not the legislative intent to authorize a sale or lease of substantially all the property of the estate when a Court finds that it is in the best interest of estate after notice and hearing.

The Court in the *Ancor Exploration* case found that a Court should make the following specific findings:

1. Whether there are facts constituting an emergency or in the absence of a demonstrated emergency, whether there are compelling facts and circumstances which support approval of the sale, be it public or private;

2. If the trustee has not solicited other prospective purchasers, private or public, whether there are facts that justify the trustee not doing so, and

3. Whether the sale, private or public, is in the best interest of the debtor estate when the consideration paid and all other relevant factors are taken into account.

30 B.R. at 808, 10 B.C.D. at 1028.

■ The testimony at trial leads this Court to believe there are compelling facts and circumstances, which even in the absence of a demonstrated emergency, would support approval of the lease. First of all, substantial funds are going to be required to restore the property to a habitable condition. Secondly, the parties proposing the restoration have indicated that absent an order approving the lease within a relatively short period of time, that they will be forced to go on to other projects and other employment.

With respect to other offers, the testimony leads the Court to find that the property was offered for sale for a substantial period of time and that no offers were obtained. The Court, therefore, finds that based upon that prior experience and the unique nature of the proposal before the Court, there are facts that justify the debtor-in-possession's failure to solicit other offers with respect to this property. Finally, the Court can find from the evidence presented that in light of all the circumstances, that the proposed lease is in the best interest of the debtor estate. The proposed monthly rental is certainly in line with the evidence heard by the Court as to the probable sale price of the property. The provisions for the upward adjustment of the lease price, although certainly not overwhelmingly beneficial to the debtor-lessor, are reasonable in light of the negotiating position of the debtor.

Although the lease provides that it can be assigned, such assignment must be with the lessor's approval. Since the lessor will be under the supervision and jurisdiction of the Bankruptcy Court, this provision will effectively require the Court to review the qualifications of any assignee or sublessee prior to giving the debtor the opportunity to grant her approval. Thus the creditors would have an opportunity to voice any objection they may have to a proposed assignee or sublessee.

It should be noted that it is this Court's interpretation of the lease agreement that the debtor is required to give approval to any sublessee. Such sublessee, pursuant to the terms of the lease, must be financially responsible to pay the rent and the amor-

tized costs of any improvements, fixtures and equipment constructed, installed or used on the premises. This Court reads that provision to require the debtor to seek Court permission to give approval to any sublessee, after a finding that such sublessee is financially responsible to pay the rent and amortized costs of any improvements, fixtures and equipment instructed, installed or used on the premises.

The Court would further grant permission, as made by oral motion, at the close of these proceedings, to modify the dates set forth in the lease as follows:

Paragraph III, page 2 from January 25 to March 1st.

Paragraph IV page 2 from January 11, 1984, to March 1, 1984.

From April 15, 1984, to June 1, 1984.

Paragraph III, page 3 from May 15, 1984, to July 1, 1984.

From June 15, 1984, to August 1, 1984 and

From November 15, 1984, to January 1, 1985.

Paragraph XXXII page 19, from July 15, 1984 to September 1, 1984.

As this opinion was being written, the Second Circuit opinion in the *Lionel Corporation* matter was published. 722 F.2d 1063 (2d Cir.1983), 35 B.R. 3, 11 B.C.D. 553 (Bkrtcy.Kan.1982).

The Second Circuit engrafts upon Section 363(b) a requirement that the Bankruptcy Court find a sound business reason to grant an application to sell or lease property of a chapter 11 debtor absent a confirmed plan of reorganization. The Court seems to impliedly state that the delay in reorganization of up to a year which the Bankruptcy Judge stated he thought would occur absent the granting of the application to sell under 363(b) was not a sound business reason.

It seems to this Court that none of the Courts previously considering this question have fashioned a test which would take into consideration the competing provisions of Section 363(b) and those necessary with respect to a chapter 11 plan confirmation.

■ Being aware of, but not bound by the decisions from other jurisdictions, it is this Court's view that a Court should make the following determinations prior to authorizing the use, sale or lease of property under Section 363(b) in a pending chapter 11 proceedings.

1. Was reasonable and adequate notice given to all interested parties.

2. Is the proposed use, lease or sale economically reasonable, taking into consideration the value of the asset and the terms and conditions of the contract or agreement which is proposed; and

3. Can the objector or objectors with respect to the asset or assets which are proposed to be used, leased or sold, defeat a plan of reorganization which contains such a provision.

In this proceeding there is one class of creditors. The two objecting parties hold claims which, if voted against a plan of reorganization that contains such a lease proposal, could defeat such a plan, absent the showings required of the debtor by Section 1129(b).

It seems to the Court that the test set forth reasonably combines the considerations of a chapter 11 plan and disclosure statement and the protection of creditors with the considerations of allowing the debtor to accept reasonable business offers on its property. At the same time, it insures that a chapter 11 reorganization can proceed as promptly and efficiently as possible. It prevents a class of creditors who could not defeat such a proposal in a plan of reorganization from causing the debtor to lose a potentially economically sound and viable business deal. It prevents a class of creditors from using an objection to a sound and reasonable lease or sale from extracting concessions from a class of creditors entitled to better treatment and prevents a class of creditors who stand to be paid in full from unduly interfering with the debtor's ability to propose a plan of the debtor's own liking. It likewise prohibits the debtor from doing under Section 363(b)

what it could not do in a plan of reorganization.

Thus, it seems the most reasonable melding of Section 363(b) and the other provisions for plan confirmation set forth in the Bankruptcy Code.

Having so concluded, this Court will reset this matter for hearing solely on the question of whether or not a plan of reorganization which contain such a provision could be confirmed under the standards set forth in Section 1129 of the Bankruptcy Code.

This opinion constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.