## In re W.A. MALLORY COMPANY, INC.

### Bankruptcy No. 96-21338-DHA.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Oct. 8, 1997.

---

Anastasia Kezman, Assistant United States Trustee, Norfolk, VA.

Beril Abraham, Virginia Beach, VA, for Debtor.

Gregory D. Stefan, Assistant United States Attorney, Norfolk, VA.

## MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter comes before the Court on the Internal Revenue Service's objection to the pre-confirmation sale of real properties held by the debtor. W.A. Mallory Company. The issue for the Court is whether the proposed sales meet the standards imposed by § 363(b).[1] Four parcels of land in Norfolk, Virginia are the subject of the proposed sales, with the IRS objecting to each sale. For reasons that follow, we sustain the IRS' objections as to all of the proposed sales.

### FACTS

Sometime during the past 20 years, the debtor obtained each of the four parcels of real property it now wishes to sell. Specifically, the properties are located at 700 C Avenue, 1654 Church Street, 1700 Church Street, and 1722 Church Street in Norfolk, Virginia.

The debtor has presented to the Court offers for the purchase of each parcel of land with proper notice to the creditors. The two

---

1. In its pleadings, the IRS argued that the proposed sale did not satisfy the requirements of § 363(f). Section 363(f) requires that one of five criteria is met before a trustee or debtor-in-possession can sell estate property free and clear of any interest in such property. The IRS conceded at the hearing, however, that the total purchase price of the debtor's proposed sales would exceed the aggregate value of all liens on the property, thus, satisfying the requirements of § 363(f). See 11 U.S.C. § 363(f)(3). The Court is left to consider, therefore, whether the sale meets the judicially imposed standards of § 363(b).

offerors, however, are "insiders" of the debtor corporation, and thus, create a potential problem to confirmation of the proposed sales. Yvonne Watkins, a stockholder and the debtor's treasurer, has offered to purchase 700 C Avenue and 1722 Church Street. Carolyn Simpkins, the sister of the debtor's president, has offered to purchase 1654 and 1700 Church Street.[2] Complicating this scenario of insider offerors is the uncontroverted evidence that the debtor has obtained no other offers, nor made any attempt to market and sell the properties during the entire 18 months since it filed bankruptcy.

To its credit, the debtor did hire an expert appraiser who testified as to the fair market value of each parcel. The appraiser's valuations were not disputed. With one exception, however, the appraised value, the City of Norfolk tax assessed value, and the offered purchase price for each parcel vary significantly. The values and offer prices are as follows:

|  | Appraised Value | Tax Assessment Value | Offered Purchase Price |
|---|---|---|---|
| **700 C Avenue** | $70,000.00 | $116,700.00 | $70,000.00 |
| **1654 Church Street** | $44,000.00 | $72,740.00 | $42,500.00 |
| **1700 Church Street** | $44,000.00 | $62,570.00 | $20,000.00 |
| **1722 Church Street** | $98,500.00 | $189,800.00 | $90,000.00 |

It is also noteworthy that this is the debtor's second bankruptcy. The first, filed in December of 1995, was administratively dismissed and closed on February 22, 1996, for the failure of the debtor's designated representative to appear at the § 341 meeting of creditors. This second bankruptcy was filed soon thereafter on March 8, 1996.

### DISCUSSION

Section 363(b) provides that a trustee or debtor-in-possession "may use, sell, or lease ... property of the estate" outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). By its terms, § 363(b) does not require Chapter 11 debtors to propose a plan of reorganization before selling estate assets outside of the ordinary course of the debtor's business. Nevertheless, courts impose their own requirements on such pre-confirmation sales to prevent debtors from using § 363 as a vehicle for circumventing the protections afforded creditors under Chapter 11.

■ This Court follows the "sound business purpose" test when examining § 363(b)

sales. *In re WBQ Partnership*, 189 B.R. 97, 102 (Bankr.E.D.Va.1995); *see also Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir.1986); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir.1983). The test consists of four elements. A trustee or debtor-in-possession must prove that:

(1) a sound business reason or emergency justifies a pre-confirmation sale;

(2) adequate and reasonable notice of the sale was provided to interested parties;

(3) the sale has been proposed in good faith; and

(4) the purchase price is fair and reasonable.

*In re WBQ Partnership*, 189 B.R. at 102 (citing *In re Delaware & Hudson Rwy. Co.*, 124 B.R. 169, 176 (D.Del.1991)).

■ The first requirement is a sound business reason justifying the pre-confirmation sales. This element is similar to many states' "business judgment rule," where great deference is given to a business in determining its own best interests. *See, e.g.*, VA.CODE ANN. § 13.1–690.A. (Michie 1950)

**2.** The debtor's president, Bobby Simpkins, Yvonne Watkins, and Carolyn Simpkins are all siblings.

("A director shall discharge his duties as a director, including his duties as a member of a committee, in accordance with his good faith business judgment of the best interests of the corporation."); *Izadpanah v. Boeing Joint Venture*, 243 Va. 81, 412 S.E.2d 708 (1992). Speaking to this element, the debtor asserts that it was "unable to service its mortgage debt … [and] pay taxes as they became due." Furthermore, the debtor states that a § 363 sale of its real property is necessary to preserve the assets of the estate. Under these circumstances, we defer to the debtor's undisputed assertions. We find that the debtor presents a sound business reason for selling the four properties, which comprises substantially all of its assets. Accordingly, we hold that the debtor has satisfied the first element of the business purpose test.

The second criteria considers whether adequate and reasonable notice of the sales was provided to the interested parties. "Due process requires notice that is reasonably calculated, under the circumstances, to apprise an interested party of the pendency of an action." *Snug Enter., Inc. v. Sage (In re Snug Enter., Inc.)*, 169 B.R. 31, 33 (Bankr.E.D.Va.1994) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). For our purposes, "notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property." *In re WBQ Partnership*, 189 B.R. at 103 (citing *In re Karpe*, 84 B.R. 926, 929 (Bankr. M.D.Pa.1988)). Here, the debtor adequately notified all interested parties and complied with the notice requirements for each proposed sale.

Finally, we address the last two criteria: whether the sales have been proposed in good faith and whether the purchase prices are fair and reasonable. While not entirely similar, these two criteria work interdependently. Good faith requires the Court to scrutinize the sales to insure that they are arm's length transactions and absolutely fair under the circumstances. This analysis complements the last part of the business purpose test because a negotiation conducted at arm's length helps to ensure that the agreed prices are ultimately fair and reasonable.

Good faith is at issue here for two reasons: 1) this is the debtor's second bankruptcy and 2) the proposed sales are to insiders of the debtor corporation. First, the Court notes that the debtor's first bankruptcy, filed December 19, 1995, was administratively dismissed for failure to appear at a § 341 meeting of creditors. While repetitive filings are not fatal in and of themselves, they are nonetheless a factor considered by the Court when examining the totality of circumstances in each bankruptcy. Here, the Court simply notes that rather than 18 months to market and sell its real estate holdings, the debtor actually has had almost two full years in which it could have done so while being afforded the protections of the Bankruptcy Code.

Second, the Court is troubled that the proposed sales are to insiders of the debtor corporation. Bobby Simpkins is the president of the debtor. The offerors of the proposed sales are Mr. Simpkins sisters, Yvonne Watkins and Carolyn Simpkins. Hence, the Court is concerned, as it is in any § 363(b) sale, with whether the sales are truly at arm's length or an attempt by the debtor to abuse the bankruptcy process to discharge unwanted debt. The debtor argues that despite the proposed insider sales, it has been forthright with the Court and it has not concealed any material fact. Notwithstanding the debtor's candor, however, the Court must acknowledge the potential for abuse.[3] The Court concludes, therefore, that under these circumstances, the proposed sales must face an higher scrutiny.

We now turn to the question of whether the purchase prices are fair and reasonable under the required heightened scrutiny. Two cases from the Fourth Circuit

---

**3.** It is noteworthy that in addition to the proposed insider sales, the debtor's schedules list $657,540.00 in total assets compared to $258,396.42 in total liabilities. The almost $400,- 000.00 equity cushion listed on the debtor's own schedules, coupled with the proposed insider sales, creates at the very least the appearance of abuse.

suggest that a proposed price is fair and reasonable if it constitutes at least 75% of the appraised value of the assets. *See Chmil v. Rulisa Operating Company (In re Tudor Associates, Ltd., II),* 20 F.3d 115, 119 (4th Cir.1994), *Willemain v. Kivitz (In re Willemain),* 764 F.2d 1019, 1023 (4th Cir.1985). This standard, however, was not applied to a § 363(b) sale. Rather, those two cases addressed a § 363(m) attack on a transfer that had already occurred.[4] Establishing an arbitrary percentage which a proposed purchase price needs to meet *before* a sale is consummated does not serve the purposes of the Bankruptcy Code which historically has preserved a great deal of latitude for courts to craft the appropriate remedy in each unique situation. We do not set such a percentage standard. We do recognize in this case, however, the disparity among the appraised values, the tax assessment values, and the offer prices.[5] Therefore, we hold that under the closer scrutiny, a proposed purchase price is deemed *not* fair and reasonable unless it equals at the very least the lessor of an acceptable appraised value or the tax assessment value.

### CONCLUSION and ORDER

In bankruptcy, the perception of a particular proceeding is often as important as the reality. Since the proposed sales involve insiders as purchasers, each of the parcels of real estate should have been offered to the public in some fashion before the Court in good conscience could approve such insider sales. The debtor cannot simply represent that there is no public, non-insider interest in the subject properties. The debtor must show the Court that the properties are being sold for the highest attainable price.

Using the standard we have chosen, we hold that the IRS objections to all four proposed sales are sustained. The debtor has failed to carry its burden of proof of demonstrating that the sales are proposed in good faith. The debtor has also failed to give the Court any means by which it can measure the fairness and reasonableness of the proposed sales. The objections to the sale of 1654 Church Street, 1700 Church Street, and 1722 Church Street are sustained in that each of those proposed sale prices do not even meet at a minimum the appraised value offered by the debtor's own expert witness. Only the offer price for 700 C Avenue equals the appraised value. The IRS objection to the sale for 700 C Avenue to Yvonne Watkins, however, is also sustained because the Court is not satisfied that the sale is fair and reasonable on grounds other than price.

It is so ORDERED.

---

4. Section 363(m) of the Bankruptcy Code provides:

  (m) The reversal or modification on appeal of an authorization ... of a sale ... of property does not affect the validity of a sale ... under such authorization to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. § 363(m).

5. The tax assessment values for each of the four properties are about 50% or more of the properties' actual appraised values. While not always an accurate value, we recognize that the tax assessment value is nevertheless a gauge that this Court should consider when evaluating sales under the business purpose test.