In the matter of TIDAL CONSTRUC-
TION COMPANY, INC., Debtor.

No. 08–42573.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Sept. 28, 2009.

James L. Drake, Jr., Savannah, GA, for Debtor.

## ORDER ON DEBTOR'S MOTIONS FOR SALE OF PROPERTY

LAMAR W. DAVIS, JR., Bankruptcy Judge.

### FINDINGS OF FACT

Debtor's case was filed on December 30, 2008. Debtor is a long-established real estate construction and development firm with several hundred parcels of undeveloped residential lots and lots with completed homes. Debtor also owes debts amounting to several millions of dollars outstanding to a number of different financial institutions. Debtor filed two Motions to sell certain property. One Motion deals with the collateral pledged to BankSouth. *Amended Motion,* Dckt. No. 177 (July 14, 2009). The second Motion deals with collateral pledged to The Coastal Bank ("Coastal"). *Amended Motion,* Dckt. No. 178 (July 14, 2009).

In general terms each sale would operate in similar fashion. Debtor would sell all of the undeveloped lots and completed homes pledged to the respective creditors to a new corporation known as Georgia Bay Builders, a company formed by the owners of the debtor corporation. The consideration paid by the new corporation would be the assumption of the debts outstanding on the loans that are secured by the property being transferred. Both Coastal and BankSouth have agreed that if the sale is approved they will consent to the new corporation's assumption of Debtor's indebtedness. The Banks would also receive the personal guarantees of Debtor's two principals (the "Principals") who are currently personal guarantors of Debtor's obligations to the same two banks. The Banks agree that any deficiency arising as a result of subsequent liquidation of the collateral would not be asserted as a claim in Debtor's bankruptcy case but would remain solely the obligation of Georgia Bay and the Principals. Neither Bank has been paid anything since the inception of this case approximately eight months ago and interest and tax accruals continue to mount on these properties.

From the evidence presented at the hearing, although there may be some equity in the individual residential properties, taking a comprehensive look at the outstanding loan balance and the current appraised or listing prices of all the real estate, the BankSouth debt exceeds the property value by approximately $30,000.00. Because no payments have been made and are not contemplated, interest continues to accrue and I conclude that there is no equity in BankSouth's collateral. Conversely, viewing the Coastal debt and looking at the current listing

prices for the real estate pledged to Coastal, it appears that there could be as much as $200,000.00 or nearly a ten percent equity margin in Coastal's collateral. Even deducting for some period of interest accrual and potential costs of sale, I find that Coastal has not proven that there is no equity in the property, although the margin is very narrow.

Debtor contends that there is a benefit to the estate in having this property transferred and for all of the debt to be forever and permanently extinguished as an obligation of the Chapter 11 debtor and assumed by a new corporation. Because there is arguably no equity in the real estate, Debtor believes that the estate is not being diminished while at the same time the estate benefits by reducing its overall debt load and ensuring that no deficiency will ever be asserted. The Banks, who support the proposal, have agreed to terms for the refinancing of the debt and support Debtor's position in full.

An objection was filed by SunTrust Bank, which has separate loans outstanding to Debtor corporation secured by separate developed and undeveloped residential real estate property. *Objection*, Dckt. No. 189 (Aug. 3, 2009). SunTrust argues that the estate is losing any potential upside equity that might be realized by the Debtor corporation should the current real estate depression ease and real estate values recover and increase within a reasonable period of time. While such an expectation is forward-looking and therefore somewhat speculative, Bankruptcy Courts are regularly asked to look with a crystal ball into the future to reach certain conclusions. SunTrust also argues that the Principals, who will be operating both Debtor and the new corporation, would be placed in a potential conflict of interest as to whether to concentrate their efforts, price incentives, and advertising on properties owned by the Debtor corporation or the new company if this arrangement is approved.

Debtor contends that the objection should be overruled because the Principals will remain personally liable for any deficiency suffered by either Debtor corporation or the new company and that exposure will ensure no self dealing on their part to favor the non-debtor corporation. The Banks and Debtor both correctly point out that if the same evidence came before the Court in the context of a motion for relief from stay the evidence might be sufficient for the Court to grant stay relief—without any restrictions or limitations on future deficiency indebtednesses owed by the Debtor—leaving Debtor worse off. While not dispositive, this argument is compelling because Debtor has obtained concessions from the Banks in exchange for taking this action.

## CONCLUSIONS OF LAW

After review of the arguments of counsel and the authorities available to the Court, I agree that the BankSouth Motion should be granted. The purpose of this Motion is to obtain Court approval to sell numerous parcels of both developed and undeveloped real estate to a newly-formed company owned by the Principals. Authority for the consideration of the Motions is founded on 11 U.S.C. §§ 363 and 105. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

Section 105 amplifies the power of the court under Section 363 and grants this Court authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." That section, however, creates no new substantive rights for the

Court in derogation of specific provisions of the Code.

*In re Friedman's, Inc.*, 336 B.R. 880, 882 (Bankr.S.D.Ga.2005) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986)).

There is an inherent friction between Section 363 provisions permitting sales of assets in Chapter 11 and the more rigorous procedural safeguards under Section 1125 (Post–Petition Disclosures and Solicitation) and 1129 (Confirmation of a Plan). The issue of when it is appropriate for a sale of all or substantially all of the assets of a debtor to occur under the expedited procedures of Section 363 rather than those dealing with disclosure and plan confirmation has been litigated in numerous contexts. *In re Braniff*, 700 F.2d 935 (5th Cir.1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir.1986); and *In re The Babcock and Wilcox Co.*, 250 F.3d 955 (5th Cir.2001). There is authority for the notion that upholding plan-like procedural safeguards is proper in proposed Section 363 sales because "[u]ndertaking reorganization piecemeal pursuant to § 363(b) should not deny creditors the protection they would receive if the proposals were first raised in the reorganization plan." *In re Gulf Coast Oil*, 404 B.R. 407, 416 (Bankr.S.D.Tex.2009) (citing *In re Allison*, 39 B.R. 300, 303 (Bankr.D.N.M. 1984)). As such, courts have generally taken a cautious approach toward approval of sales which are *sub-rosa*, or more appropriately, *de facto* Chapter 11 reorganization plans. *In re Chrysler LLC*, 576 F.3d 108, 116 (2nd Cir.2009). Nevertheless, courts have recognized certain situations in which the necessity of the situation justifies the sale: the perishability of assets, the wasting or diminution in value of assets, the loss of a valuable business opportunity and the like. *See In re Lionel Corp.*, 722 F.2d 1063, 1069, 1071 (2nd Cir. 1983).

There, the court traced the development of the law concerning sales of debtor's property from the early concept of emergency situations, to perishability issues, to deterioration in price and value. In the context of that history, the Bankruptcy Reform Act of 1978, in adopting § 363(b) appeared to grant much broader discretion to judges to authorize the use, sale or lease of property outside the ordinary course of business because it omitted any reference to emergency and perishability requirements or even that the applicant must show "cause." Nevertheless, the court recognized an inherent conflict between allowing unfettered judicial discretion and leaving the approval of sales inflexibly tied into the standards applicable to plan confirmation. *See* Lionel p. 1071. To balance the tension between § 363(b) and Chapter 11 confirmation safeguards, the court adopted the rule that a judge determining a § 363(b) sale motion must expressly find from evidence presented that there is a "good business reason to grant such an application." *Id.* Without adopting a fixed laundry list of factors, the court mentioned that judges might consider the proportionate value of the asset the estate as a whole, the amount of the elapsed time since the filing, the likelihood that a plan can be proposed and confirmed in the near future, the effect of the disposition on the terms of a future plan, a comparison of the amount to be received from the sale in contrast to appraisals of the property, and perhaps most importantly, whether the asset is increasing or decreasing in value. *Id.* This formulation was relied on heavily in the more recent case of *Chrysler*, at 113–14.

■ In this case, because the sale does not involve all or substantially all of the Debtor's assets, the same test may not necessarily be applicable. However, be-

cause approval of this sale will inevitably impact all the other creditors in the case, this Court believes that a sale should only be approved in advance of plan confirmation if, at minimum, similar good business reasons are shown. Here, Debtor is saddled with millions of dollars of debt. The properties are neither selling nor generating revenue and the debt continues to mount. When there is no equity in the property, selling it for what is owed decreases Debtor's debt load and avoids the possibility of a deficiency judgment. In short, Debtor seeks to surrender an asset, extinguish an equal liability, decrease monthly interest accrual, and avoid a deficiency judgment. These circumstances constitute a good business reason for the § 363 sale.

 However, as pointed out by SunTrust, even when parties are completely forthright with the facts surrounding the transfer, § 363 sales to insiders are subject to a higher scrutiny because of the opportunity for abuse. *In re Mallory Co.,* 214 B.R. 834, 837 (Bankr.E.D.Va.1997). This higher scrutiny requires (1) that the proposed purchase price be "at the very least the lessor [sic] of an acceptable appraised value or the tax assessment value," and (2) that the property must have been offered to the public in some form before the court can approve an insider sale. *Id.* at 838; *In re Gulf Coast Oil Corp.,* 404 B.R. 407, 424 (Bankr.S.D.Tex.2009). In fact, the debtor must show that the assets are being sold for the highest price attainable. *Mallory* at 837. At the very least the court must be satisfied that an insider transaction is the result of bonafide arm's length transactions and not driven by other factors. *See generally In re General Bearing Corp.,* 136 B.R. 361 (Bankr. S.D.N.Y.1992).

 Here, I find that the terms of the proposed BankSouth collateral sale are equal to the market value because the properties have been on the market for several months and the listing prices have been lowered to stimulate sales. That the properties continue on the market without selling is indicative of the fact that the properties are worth some amount less than the asking price. Because they have been exposed to the market for an extended period of time without being purchased, I am convinced that the BankSouth collateral is being transferred to Georgia Bay for the highest price reasonably attainable. As such, this sale meets the higher scrutiny due insider sales. The terms of the sale have been fully revealed to creditors at the hearing and examined by the Court. I find this level of disclosure and scrutiny sufficient to meet the heightened standard test.

The evidence, however, does not reveal that the estate would realize the full value of the Coastal collateral which still retains a small, although marginal equity. For that reason, the Motion relating to its collateral will be denied on an interim basis.

## CONCLUSION

Debtor theoretically could propose exactly the same terms that would be employed here into the terms of a plan which would then be presented to all creditors after a full-blown disclosure statement hearing. It would thereafter be approved only in the context of a comprehensive plan in which Debtor deals with all of its creditors.

However, Section 363 sales clearly are authorized in appropriate circumstances. The good business reason test has been met. The issues as posed by the parties are two-fold. First, the possibility of upside value in this real estate as argued by SunTrust is, in the judgment of this Court, far less likely than the benefit of the estate to be obtained by immediately extinguish-

ing any possibility in deficiency claims by BankSouth. Certainly, at some future time this real estate may, and hopefully will, be worth more than it is today. But the uncertainty as to when that day might come and the fact that additional debt will accrue from this moment until that moment renders the expectation of increased equity to the estate to be wildly speculative in contrast to extinguishing the potential deficiency claim and the burden of debt service for these properties by this estate which is a certainty. Second, in the absence of any evidence of equity in this property sufficient to provide adequate protection to BankSouth, this Court would have no basis to deny stay relief if it were sought. Because the effect of granting stay relief would deprive the estate of this property without the assurance that there will be no further deficiency claims by either creditor, taking action now to recognize that reality rather than delaying the inevitable is both a good business reason and a sound jurisprudential reason to grant this Motion.

The final objection argued by SunTrust has to do with the potential conflict of interest occasioned by the fact that the principals of the Debtor and the principals of the new corporation which will be in direct competition with the Debtor renders a solution such as this inappropriate or unwarranted. While I recognize that risk, the Debtor's principals have a fiduciary obligation to operate this Debtor corporation in an appropriate fashion and they are indeed constrained in terms of their own economic self interests by the fact that any unsecured deficiency which the Debtor is saddled with as a result of further proceedings in this Court or the manner in which they operate that business will attach to them personally. As a result, I conclude that because there has been full disclosure of the nature of this transaction and the fact that they will serve as principals of the acquiring corporation, the appropriate degree of scrutiny has been given to this insider transaction and on balance, it is in the interest of creditors to approve it.

### ORDER

Pursuant to the foregoing IT IS THE ORDER OF THIS COURT that the Debtor's Motion to Sell property pledged as collateral to BankSouth is GRANTED.

IT IS FURTHER ORDERED that the Debtor's Motion to Sell property pledged as collateral to The Coastal Bank is DENIED and a continued hearing will be assigned.